UNITED STATED DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| XRAMP TECHNOLOGIES. INC. and <br> XRAMP SECURITY SERVICES, INC., <br><br> Plaintiff, <br><br> v. <br><br> GEOTRUST, INC. and <br> CHRISTOPHER BAILEY, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil Action No. 05-11374-RCL |
| GEOTRUST, INC., <br><br> Counterclaim-Plaintiff, <br><br> v. <br><br> XRAMP TECHNOLOGIES. INC. and <br> XRAMP SECURITY SERVICES, INC., <br><br> Counterclaim Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**GEOTRUST, INC.'S MEMORANDUM OF LAW IN SUPPORT
OF ITS MOTION TO COMPEL THE PRODUCTION OF
<u>DOCUMENTS AND INTERROGATORY ANSWERS</u>**

Defendant and counterclaim-plaintiff GeoTrust, Inc. ("GeoTrust") submits this memorandum of law in support of its motion to compel the production of documents and information from plaintiffs and counterclaim-defendants XRamp Technologies Inc. and XRamp Security Services, Inc. (collectively, "XRamp").

GeoTrust's motion to compel is necessary because: (1) XRamp has refused to produce information and documents which are critical to both parties' claims and defenses on the basis that the information is "confidential" even though GeoTrust has offered to enter into a

confidentiality agreement; (2) consistent with its pattern of delay throughout this case, XRamp has promised to produce, but has not produced, documents related to a separate lawsuit in which XRamp was alleged to have engaged in the *same conduct* that is the subject of GeoTrust's counterclaim; (3) XRamp refuses to produce a privilege log; and (4) XRamp has not produced all documents related to its damages calculations.

Nearly nine months after filing a lawsuit seeking $4.5 million in damages, 8 letters and innumerable telephone calls about discovery, XRamp has produced only a small fraction of the documents that it is obligated to produce. Fact discovery is supposed to end in two and a half months. GeoTrust cannot continue to accommodate XRamp's failure to respond to discovery requests.

For all the reasons set out below, the Court should allow this motion and because XRamp has no good faith basis for its refusal to provide the information that is subject of this motion, GeoTrust should be awarded the costs incurred in bringing this motion, pursuant to Fed. R. Civ. P. 37(a)(4).

## **Background**

**A. The Industry.**

GeoTrust and XRamp are in the business of providing goods and services that allow web site operators to securely transmit data over the Internet. The accepted method for transmitting confidential information over the Internet is to create an encrypted link between a web server and a web browser using the Secure Sockets Layer, or "SSL," protocol. The SSL protocol requires that a web site operator have an SSL certificate, which provides information about the web site operator and its encryption methodology.

GeoTrust is a Certificate Authority, or "CA." It provides SSL certificates to the operators of web sites. For at least some period of time, XRamp was also a CA and/or a "reseller" of SSL certificates provided by another CA.

### B. XRamp's Claims.

XRamp commenced this case on or about June 28, 2005, asserting that GeoTrust and one of its employees, Christopher Bailey, posted inaccurate or misleading information about XRamp on a website. Among other things, XRamp alleges that GeoTrust falsely stated that XRamp was a "temporary-pseudo certification authority" that did not own its own "root certificate," and had to rely on a competitors' root certificate. See Complaint ¶ 14. (The Complaint is attached to the Affidavit of Daniel P. Tighe ("Tighe Aff.") as Exhibit A.) It is GeoTrust's position that that statement is not at all inaccurate because, among other things, XRamp did not own its own "trusted root" certificate. Instead, XRamp had some sort of contractual arrangement with a competing CA called GlobalSign, and this is precisely what the website conveyed. See Tighe Aff., Ex. B (printouts of the website produced by XRamp as part of its automatic disclosure).

### C. XRamp's Alleged Damages.

In the civil action cover sheet submitted with the Complaint, XRamp alleged that it suffered $4.5 million in damages. See Tighe Aff., Ex. C. The apparent basis of this damages claim is the contention that XRamp's revenue growth lagged behind some of other industry members, allegedly as a result of GeoTrust.[1]

---

[1] XRamp's profit and loss statements show that there was certainly no material decline in its revenues during much of the period that the website was in operation. In fact, XRamp's revenues appear to have increased during the relevant period. Thus, the only possible explanation for its damages allegations is some sort of comparison to other industry participants.

3

**D. GeoTrust's Counterclaim**.

On August 26, 2005, GeoTrust filed its Answer and Counterclaim. In its Counterclaim, GeoTrust alleged that XRamp had sent email to GeoTrust customers in which XRamp encouraged the GeoTrust customers to "renew" their SSL certificates. These XRamp email messages did not disclose that they were sent by XRamp, and if a recipient followed the links on the email, the GeoTrust customer would unwittingly "renew" the SSL certificate by purchasing it from XRamp instead of from GeoTrust. GeoTrust alleged that XRamp violated the Lanham Act, 15 U.S.C. 1125(a), Mass. G.L. ch. 93A, and that it tortiously interfered with GeoTrust's relationship with its customers.

The allegations in GeoTrust's counterclaim are nearly identical to the allegations that were asserted against XRamp by a company called Verisign, Inc. and others in a lawsuit filed in the United States District Court for the Western District of Texas, captioned <u>Verisign, Inc., et al v. XRamp Technologies, Inc., et al</u>, U.S. District Court for the Western District of Texas Case No. SA-030CV-1131 (the "Verisign Litigation"). *See e.g.* Proposed Second Amended Complaint (without Exhibits) from the Verisign Litigation ¶¶ 9-12 (attached to the Tighe Affidavit as Exhibit J).

**E. The Discovery Schedule.**

On or about November 9, 2005, the parties attended an initial scheduling conference. They had previously filed, on November 3, 2005, their Joint Local Rule 16.1 Statement ("Joint Statement"). <u>See</u> Tighe Aff., Ex. D. Among other things, the Joint Statement set forth an agreed-upon schedule for the case. <u>Id.</u> It required that the parties make their initial disclosures on November 23, 2005, and that fact discovery ended on May 31, 2006. GeoTrust served its

initial disclosure on November 23, 2005; XRamp served its initial disclosure on February 8, 2006.  See Tighe Aff., Ex. E.

### F. GeoTrust's Document Requests and Interrogatories.

On December 1, 2005, GeoTrust served on XRamp (1) GeoTrust's First Set of Interrogatories, and (2) GeoTrust's First Request for the Production of Documents.  (Copies are attached to the Tighe Affidavit as Exhibit F.)  The discovery that was sought can be divided into three broad categories:

> (a) documents related to XRamp's apparent practice of soliciting competitors' customers (including, but not limited to customers of GeoTrust and Verisign) to "renew" their SSL certificates with XRamp, including emails sent to competitors' customers and documents from a prior litigation between XRamp and Verisign, Inc. concerning this very issue; and
>
> (b) documents related to XRamp's contention that GeoTrust made false and/or misleading statements; and
>
> (c) documents related to XRamp's alleged damages.

The particular requests and responses at issue are set out below.

### G. XRamp's Document Production and Discovery Responses to Date.

On February 8, 2006, XRamp provided its initial disclosures (that were due on November 23, 2005) and produced approximately 55 pages of documents.  On February 22, 2006, XRamp provided its responses to GeoTrust's Request for the Production of Documents (that were due on January 3, 2006) and produced three pleadings that were filed in the Verisign Litigation and 12 other pages of documents.  On March 9, XRamp produced approximately 60 pages of profit and loss statements.

After the numerous letters and phone calls related to XRamp's discovery responses, see Tighe Aff., Ex. G (letters dated January 18, 2006; January 31, 2006; February 8, 2006; February

15, 2006; February 16, 2006; February 28, 2006; March 9, 2006; and March 13, 2006), XRamp's current position with respect to discovery is as follows:

1. XRamp has not produced the documents related to the Verisign Litigation even though it has agreed to produce at least some of that material.

2. XRamp will not produce "confidential" information related to its settlement of the Verisign Litigation.

3. XRamp will not produce "confidential" information related to its contract with GlobalSign.

4. XRamp will not produce documents that XRamp contends are privileged, nor will it provide a privilege log justifying the exclusion of those documents.

5. XRamp will not produce documents related to its $4.5 million damages calculation (other than in connection with a damages expert report), other than profit and loss statements.

**Argument**

I. **THE DISCOVERY SOUGHT BY GEOTRUST IS DIRECTLY RELEVANT TO BOTH PARTIES' CLAIMS AND DEFENSES, AND THERE IS NO GOOD CAUSE FOR XRAMP'S CONTINUED FAILURE TO PRODUCE IT.**

Unfortunately, the intervention of this Court is necessary. See R.W. Intern. Corp. v. Welch Foods, Inc., 937 F.2d 11, 18 (1st Cir. 1991) (Rule 37 is "an important case management tool"). GeoTrust has made repeated inquiries to secure the discovery owed to it, and had warned about having to bring a motion to compel as far back as January 31, 2006. See Tighe Aff., Ex. G. Those repeated requests have fallen on deaf ears. The First Circuit has criticized this type of obstructionist conduct:

> The purpose of discovery is to 'make a trial less a game of blindman's buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent.' … Once a proper discovery request has been seasonably propounded, we will not allow a party sentiently to avoid its obligations by filing

>misleading or evasive responses, or by failing to examine records within its control.

Anderson v. Cryovac, Inc., 862 F.2d 910, 929 (1st Cir. 1988) (quoting United States v. Procter & Gamble, 356 U.S. 677, 682 (1958)).

With the end of discovery is fast approaching, GeoTrust has been left with no alternative but to seek this Court's assistance, so that it may obtain the discovery it needs to defend the claims against it, and to prove its counterclaims. See Fed. R. Civ. P. 26(b)(1) (parties "may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party....").

**1.    ALL DOCUMENTS RELATED TO THE VERISIGN LITIGATION—NOT JUST PLEADINGS -- SHOULD BE PRODUCED IMMEDIATELY.**

*A.    Relevant Document Requests and Responses*

2.    All Documents related to [] XRamp's relationship with VeriSign, N.V or any company affiliated with VeriSign N.V., including contracts, correspondence, notes, email and internal memoranda related to VeriSign.

**Response**: XRamp has no such documents.

8.    All documents related to any and all claims that XRamp confused or misled consumers by its use of the word "renew" in email soliciting business or otherwise, including Documents related to any litigation matter in which such claims were made.

**Response**: Produced is a Declaration in Support of a Motion for Leave to file Second Amended Complaint with Exhibits filed in Verisign, Inc. et al v. XRamp Technologies, Inc. and Scott Harris, U.S. District for the Western District of Texas, San Antonio Division, docket #SA-030CV-1131. Additional pleadings filed in this action are stored in several boxes at XRamp's offices in San Antonio and will be made available for inspection and copying. Since those pleadings were electronically filed in the U.S. District Court, they should also be accessible directly from the Court.

7

See Tighe Aff., Ex. H.

### B.    Argument

XRamp's response is wholly inadequate, for a number of reasons.

First, XRamp has committed to producing only "pleadings," when GeoTrust's request was much broader than that. GeoTrust has requested and is entitled to *all* documents related to the Verisign Litigation. XRamp may have made certain admissions in recorded testimony, or the evidence in that case may support GeoTrust's counterclaim, or judgment may have entered against XRamp, in which case res judicata would apply. Therefore, GeoTrust seeks not only pleadings, but also (a) all correspondence between the parties (or their attorneys), (b) all transcripts, (c) all documents that either Verisign or XRamp produced, and (d) the parties' settlement agreement. The Court should order XRamp to produce all of these documents. Those documents should be produced. See Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978) (finding that under federal rules, relevant discoverable materials broadly include "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case").

Second, counsel for XRamp has agreed to produce at least some of these documents, but has failed to do so, despite repeated requests from GeoTrust's counsel. See Tighe Aff., Ex. G.

Third, to the extent that XRamp tries to shift the burden to GeoTrust to obtain pleadings off of the internet or from the Court (even if that was possible and even if a complete set of documents could be obtained from those sources) it is improper. If XRamp possesses the relevant documents, XRamp must produce them. See, e.g., Italia di Navigazione, SPA. v. M.V. Hermes I, 564 F. Supp. 492, 495 (S.D.N.Y. 1983), *aff'd on other grounds*, 724 F.2d 21 (2d Cir.1983) (rejecting objection to production on ground that party had access to documents it

sought); Burton Mechanical Contractors, Inc. v. Foreman, 148 F.R.D. 230, 236 (N.D. Ind. 1992) (rejecting contention that documents need not be produced because they were in requesting party's possession as result of separate litigation); Weiner v. Balch Halsey Stuart, Inc., 76 F.R.D. 624, 625 (S.D. Fla. 1977) (production ordered even though defendant had copies in his own files); cf. Kozlowski v. Sears, Roebuck & Co., 73 F.R.D. 73, 76 (D. Mass. 1976) ("Merely because compliance with a 'Request for Production' would be costly or time-consuming is not ordinarily sufficient reason to grant a protective order where the requested material is relevant and necessary to the discovery of evidence.").

Fourth, counsel for XRamp has objected to producing the settlement agreement from the Verisign Litigation, related correspondence and even any resulting Order of the Court because such information is "confidential." GeoTrust, however, has offered to enter into a confidentiality agreement that would treat the settlement agreement as confidential. As explained below, however, the purported confidentiality of a document is not a proper basis to withhold documents from production. "Although a settlement agreement contains a confidentiality provision, litigants cannot shield otherwise discoverable information from disclosure to others by agreeing to maintain its confidentiality, and cannot modify the Federal Rules of Civil Procedure by agreement." Sonnino v. University of Kansas Hosp. Auth., 2004 WL 769325, at *3 (D. Kan. Apr. 8, 2004); In re Columbia/HCA Healthcare Corp. Billing Practices Litig., 293 F.3d 289, 313 (6th Cir. 2002) ("parties cannot create a privilege against civil discovery by mere written agreement").

9

**2. DOCUMENTS THAT RELATE TO THE TRUTH OR FALSITY OF GEOTRUST'S REPRESENTATIONS ABOUT XRAMP'S ARRANGEMENT WITH GLOBAL SIGN SHOULD BE PRODUCED, NOTWITHSTANDING OBJECTIONS ABOUT "CONFIDENTIALITY."**

*A.   Relevant Document Request and Response*

3.   All Documents that support the contention that statements made by GeoTrust are false, misleading, deceptive or the cause of customer confusion.

**Response**: Emails from confused customers are produced. Copies of the misleading statements on the web sites have been produced by both parties in their initial disclosures.

See Tighe Aff., Ex. H.

*B.   Relevant Interrogatories and Answers*

5.   Please state when, if at all, XRamp acquired and or developed its own "trusted root certificate."

**Answer**: XRamp Security Services, Inc. owns two trusted root certificates. One was created in December 2003 (signed by GlobalSign) and the other was created in September 2005 (self-signed).

6.   Please state whether XRamp has a contractual or other relationship with GlobalSign, N.V. ("GlobalSign") pursuant to which XRamp pays or has paid royalties, license or other fees to GlobalSign, and if so, please state what services GlobalSign provides to XRamp, the terms of the arrangement and when the arrangement is due to expire.

**Answer**: XRamp has a contract with GlobalSign pursuant to which GlobalSign signs XRamp root certificates. **The terms of this arrangement are confidential.**

See Tighe Aff., Ex. I (emphasis added).

*C.   Argument*

One of the central issues in the case is XRamp's claim that GeoTrust misrepresented the nature of XRamp's trusted root certificate on a website. These "misrepresentations" allegedly

10

occurred in 2004.  See Tighe Aff., Ex. B.  Obviously, the truth or falsity of the representations when they were made is a critical issue, and GeoTrust seeks documents and information to ascertain that critical fact.

XRamp's discovery responses on this issue are at best evasive.  XRamp only has committed to producing "emails from confused customers" and web sites printouts.  In its interrogatory answer, XRamp states that it "owns two trusted root certificates," referencing the GlobalSign certificate and another that was created in 2005.  Yet XRamp has refused to produce XRamp's contract (and the terms of its arrangements) with GlobalSign, which would explain whether it is true that XRamp 'owns' the GlobalSign root as it states in its interrogatory answer.  The basis for its refusal – even though this is the critical piece of information to prove or disprove its claims – is that such information is "confidential."  That is not a proper ground on which to withhold discovery.  In Kleinerman v. U.S. Postal Service, 100 F.R.D. 66 (D. Mass. 1983), this Court stated the general principle that:

> "**[t]rade secrets and other confidential commercial information enjoy no privilege from disclosure** although courts may choose to protect such information." ...  Although a defendant may have a legitimate interest in protecting its trade secrets, "that interest must yield to the right of the plaintiff to discover the full truth of the facts involved in the issues of the case ... [where] the issues cannot be fairly adjudicated unless this information is available." …

Id. at 69 (emphasis added; citations omitted).

Even in cases involving *technical trade secrets*, courts have required the production of relevant information.  See  Kleinerman 100 F.R.D at 69 ("plaintiff should be able to discover MMC's technical reports, MMC's technical proposals, the correspondence between MMC and USPS on the contract and the evaluation reports of MMC's work," where "defendants have not persuaded me that their need to keep these documents confidential outweighs plaintiff's need for

11

the information they contain."); see also Coca-Cola Bottling Co. of Shreveport, Inc. v. Coca-Cola Co., 107 F.R.D. 288, 293 (D. Del. 1985) ("A survey of the relevant case law reveals that discovery is virtually always ordered once the movant has established that the secret information is relevant and necessary.").

In this case, there is no question that the GlobalSign contract(s) – like the Verisign Litigation settlement documents – are relevant to the case. Indeed, XRamp's arrangements with GlobalSign could be dispositive of XRamp's claims; and the Verisign settlement agreement could be dispositive of GeoTrust's counterclaim (e.g., if judgment entered against XRamp on those claims).

Accordingly, this Court should order XRamp to produce all allegedly "confidential" documents. As it is promised to do so in the past, GeoTrust will enter into a confidentiality agreement or stipulated protective order to maintain the "confidentiality" of said information.

### 3. TO THE EXTENT IT IS WITHHOLDING PRIVILEGED DOCUMENTS, XRAMP SHOULD BE COMPELLED TO PRODUCE A PRIVILEGE LOG.

XRamp contends that certain documents and information are privileged, yet it has refused to produce a privilege log justifying the exclusion of those documents. This information, of course, is required to be provided in a privilege log. Fed. R. Civ. P. 26(b)(5) provides:

> When a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.

Similarly, Local Rule 34.1(E) provides:

> When a claim of privilege is asserted in objection to any document request, or any sub-part thereof, and any document is not provided

on the basis of that assertion, the attorney asserting the privilege shall identify in the objection the nature of the privilege that is being claimed with respect to each such document. If the privilege is being asserted in connection with a claim or defense governed by state law, the attorney asserting the privilege shall indicate the particular privilege rule that is being invoked.

Accordingly, to the extent it is withholding responsive documents because of a privilege, XRamp should be ordered to generate and serve a privileged log forthwith.

**4.    XRAMP SHOULD BE COMPELLED TO PRODUCE DOCUMENTS RELATED TO ITS DAMAGES IMMEDIATELY.**

*A.    Relevant Document Requests and Responses*

4.    All financial statements, including balance sheets, statements of operations, profit and loss statements and statements of cash flows for XRamp Technologies, Inc. for all periods between 2001 and 2005 inclusive.

**Response**: These documents are being compiled by XRamp's accountant and will be produced.

5.    All financial statements, including balance sheets, statements of operations, profit and loss statements and statements of cash flows for XRamp Security Services, Inc. for all periods between 2001 and 2005, inclusive.

**Response**: These documents are being compiled by XRamp's accountant and will be produced.

6.    All consolidated financial statements, including balance sheets, statements of operations, profit and loss statements and statements of cash flows for XRamp for all periods between 2001 and 2005, inclusive.

**Response**: These documents are being compiled by XRamp's accountant and will be produced.

10.    All documents related to any claim that XRamp was damaged by the conduct of GeoTrust.

**Response**: XRamp has produced a letter proposing a settlement of the claim against GeoTrust setting forth the damages and supported by a graph showing a decline of sales at a time corresponding to the misleading website. **XRamp will produce**

>**copies of its financial statements.  In addition, XRamp will produce a report of its expert on damages pursuant to this Court's scheduling order.**

See Tighe Aff., Ex. H (emphasis added).

### B.     *Relevant Interrogatory and Answer*

    4.     Please provide a full and complete breakdown of any and all damages you claim to have suffered as a result of the allegations contained in the Complaint.

    **Answer**: XRamp has retained an expert to analyze its records and other information to prepare an opinion of damages.  This opinion will be produced in accordance with the scheduling order in this case.

See Tighe Aff., Ex. I.

### C.     *Argument*

Notwithstanding its initial disclosure obligations and its promise to produce responsive documents, XRamp has failed to do so (other than profit and loss statements).  Discovery in this case ends May 31, 2006.  GeoTrust served its discovery requests on December 1, 2005.  XRamp has repeatedly and consistently neglected its discovery obligations, and is refusing to produce (and/or interminably delaying the production of) clearly relevant documents.

This Court should require XRamp to produce all responsive documents immediately, and should specify that XRamp is obligated to produce more than "financial statements" and a "report of its expert."  In this case, XRamp has alleged that it suffered $4.5 million in damages.  See Tighe Aff., Ex. C.  GeoTrust is permitted to probe how this number was calculated, and is entitled to *all non-privileged data* upon which XRamp bases its damages calculation.  In addition, GeoTrust is entitled to all data that are related to its damages (whether or not XRamp or its damages expert considers that information).  See Miller v. Doctor's Gen. Hosp., 76 F.R.D. 136, 138-39 (W.D. Okla. 1977) ("A request for discovery should be considered relevant if there

is any possibility that the information sought may be relevant to the subject matter of the action."); Gagne v. Reddy, 104 F.R.D. 454, 456 (D. Mass. 1984) ("discovery should ordinarily be allowed under the concept of relevancy unless it is clear that the information sought can have no possible bearing upon the subject matter of the action").

In addition to financial statements, therefore, XRamp should be compelled to produce actual and projected XRamp sales and income data, industry sales information, and any other data that relates to a comparison of XRamp and industry revenues as a basis for its damages calculations.

### II.    XRAMP SHOULD BE ORDERED TO PAY GEOTRUST'S EXPENSES IN SEEKING THIS RELIEF.

Counsel for GeoTrust was very patient, and tried to resolve this discovery dispute without this Court's intervention. Counsel wrote numerous letters and spoke to counsel on the phone. See, e.g., Tighe Aff., Ex. F. XRamp's continued unjustified delays and unreasonable discovery positions has forced GeoTrust's hand, making this motion inevitable.

Because it has no good faith reason for its failure - and in some instances, refusal - to produce documents and information, sanctions are appropriate. "Rule 37(a)(4)(A) requires this Court to order [XRamp] or his counsel to pay [GeoTrust's] reasonable expenses incurred in bringing the pending motion unless it finds that 1) the opposition to the motion to compel was 'substantially justified', or 2) other circumstances make an award of expenses unjust." Cabana v. Forcier, 200 F.R.D. 9, 17 (D. Mass. 2001).

## Conclusion

For all of the above reasons, GeoTrust requests this Court to order XRamp to:

a. produce all documents related to the Verisign Litigation;

b. produce all documents, and fully respond to all interrogatories, concerning the truth or falsity of the allegation that made misrepresentations about XRamp, specifically including (but not limited to) XRamp's contract with GlobalSign and the arrangements between the companies;

c. produce all responsive "confidential" information;

d. produce a privilege log;

e. produce documents relating to XRamp's alleged damages, including but not limited to all data upon which XRamp bases its damages calculation, actual and projected XRamp sales and income data, and industry sales information; and

f. pay GeoTrust's reasonable expenses in bringing this motion.

> GEOTRUST, INC. and
> CHRISTOPHER BAILEY,
>
> By their attorneys,
>
>
> _____/s/_Daniel P. Tighe_____
> Daniel P. Tighe (BBO # 556583)
> Scott McConchie (BBO # 634127)
> Griesinger, Tighe & Maffei, LLP
> 176 Federal Street
> Boston, MA 02110
> (617) 542-9900

Dated:  March 17, 2006

## Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on March 17, 2006.

> _____/s/_Daniel P. Tighe_____
> Daniel P. Tighe