UNITED STATED DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                                     )
XRAMP TECHNOLOGIES. INC. and         )
XRAMP SECURITY SERVICES, INC.,       )
                                     )
              Plaintiff,             )
                                     )
v.                                   )
                                     )
GEOTRUST, INC. and                   )
CHRISTOPHER BAILEY,                  )
                                     )
              Defendants.            )
_____)     Civil Action No. 05-11374-RCL
                                     )
GEOTRUST, INC.,                      )
                                     )
         Counterclaim-Plaintiff,     )
                                     )
v.                                   )
                                     )
XRAMP TECHNOLOGIES. INC. and         )
XRAMP SECURITY SERVICES, INC.,       )
                                     )
        Counterclaim Defendants.     )
_____)
```

## <u>AFFIDAVIT OF DANIEL P. TIGHE</u>

Daniel P. Tighe, on oath, deposes and says as follows:

1.      I represent the Defendant and counterclaim-plaintiff GeoTrust, Inc. ("GeoTrust") in the above-captioned action.  I am a member in good standing of the bar of the Commonwealth of Massachusetts.  This affidavit is submitted in support of GeoTrust's motion to compel the production of documents and information from plaintiffs and counterclaim-defendants XRamp Technologies Inc. and XRamp Security Services, Inc. (collectively, "XRamp").

2.      Attached hereto as <u>Exhibit A</u> is a true copy of the Complaint in this action.

3.      Attached hereto as <u>Exhibit B</u> is a true copy of printouts from the website that XRamp alleges contains false and misleading representations.  These printouts were produced by XRamp as part of its initial disclosures.

4.      Attached hereto as <u>Exhibit C</u> is a true copy XRamp's Civil Cover Sheet, in which it alleged that it suffered $4.5 million in damages.

5.      Attached hereto as <u>Exhibit D</u> is a true copy of the parties' Joint Local Rule 16.1 Statement in this case.

6.      Attached hereto as <u>Exhibit E</u> are true copies of the cover letters indicating service of the parties' initial disclosures.  GeoTrust served its initial disclosure on November 23, 2005; XRamp served its initial disclosure on February 8, 2006.

7.      Attached hereto as <u>Exhibit F</u> are true copies of GeoTrust's First Set of Interrogatories, and GeoTrust's First Request for the Production of Documents.

8.      Attached hereto as <u>Exhibit G</u> are true copies of 8 letters that I have sent to opposing counsel in order to obtain the discovery to which GeoTrust is entitled.  I have also spoken to opposing counsel on the phone numerous times.  Based on these communications, I have learned that XRamp's current position with respect to discovery is as follows:

1.   It has not produced documents related to its damages, has committed to producing only a fraction of what is responsive, and will not commit to a date by which it will produce documents.

2.   It has not produced documents related to the Verisign Litigation and will not commit to a date by which it will.

3.   It will not produce "confidential" information related to its settlement of the Verisign Litigation.

4.   It will not produce "confidential information related to its contract with GlobalSign," which bears on the truth of falsity of the statements that gave rise to the instant litigation.

5.   It will not produce documents related to the Verisign Litigation (and

perhaps other responsive documents) that XRamp contends are privileged, nor will it provide a privilege log justifying the exclusion of those documents.

9.    Attached hereto as <u>Exhibit H</u> is a true copy of XRamp's document response.

10.    Attached hereto as <u>Exhibit I</u> is a true copy of XRamp's interrogatory answers.

11.    Attached hereto as Exhibit J is a true copy of a Proposed Second Amended Complaint filed in <u>Verisign, Inc., et al  v. XRamp Technologies, Inc., et al</u>, U.S. District Court for the Western District of Texas Case No. SA-030CV-1131.


Signed under the pains and penalties of perjury this 17 day of March, 2006.


_____/s/  Daniel P. Tighe_____
Daniel P. Tighe


**Certificate of Service**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on March 17, 2006.


_____/s/  Daniel P. Tighe_____
Daniel P. Tighe

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| XRAMP TECHNOLOGIES, INC. and XRAMP SECURITY SERVICES, INC. | NO. 05— 11374 RCL |
| Plaintiffs, | BBO #057420 |
|  | #539030 |
| v. |  |
| GEOTRUST, INC., and CHRISTOPHER BAILEY |  |
| Defendants. |  |

## COMPLAINT AND JURY DEMAND

### I. PARTIES.

1.  The Plaintiff XRAMP Technologies, Inc. ("XRAMP Technologies") is a Texas corporation with a principal place of business in San Antonio, Texas.

2.  The Plaintiff XRAMP Security Services, Inc. ("XRAMP Security") is a Texas corporation with a principal place of business in San Antonio, Texas.

3.  The Defendant GeoTrust, Inc. ("GeoTrust") is a Delaware Corporation with a principal place of business in Needham, Massachusetts.

4.  The Defendant Christopher Bailey ("Bailey") is an individual and resident of Atlanta, Georgia. At all operative times, Bailey was a Co-Founder, Vice President of Business Development, and thus an agent and/or employee of the Defendant GeoTrust.

### II. JURISDICTION AND VENUE.

5.  This Court has original diversity jurisdiction over this matter pursuant to 28 U.S.C. sec. 1331 and 28 U. S. C. sec. 1332. The amount in controversy exceeds $75,000 as required by 28 U. S. C. sec. 1332(a).

6. This Court has jurisdiction over the Defendants by virtue of GeoTrust's residence in, and conduct of business within, the Commonwealth.

## III. FACTUAL ALLEGATIONS.

7. The Plaintiffs XRAMP Technologies and XRAMP Security and the Defendant GeoTrust are in the business of selling SSL certificates, which are also known as "digital certificates" or "secure certificates." SSL certificates provide for secure, encrypted communications between a web browser and a web server so that persons using the Internet may transmit sensitive information, such as credit card information, with the confidence that such transmissions are confidential, private and secure.

8. SSL certificates are sold worldwide by a limited number of business competitors known as "certificate authorities." The Plaintiffs XRAMP Technologies and XRAMP Security and the Defendant GeoTrust are "certificate authorities" and are in business competition with each other.

9. The SSL certificates sold in the marketplace by the Plaintiffs XRAMP Technologies and XRAMP Security and by the Defendant GeoTrust are functionally equivalent to each other, although the Plaintiffs generally offer their SSL certificates to potential customers at a lower price than the Defendant GeoTrust.

10. The Defendant Bailey and the Defendant GeoTrust conspired to create and promote a web site on the Internet captioned www.sslreview.com ("SSLREview"). The Defendant Bailey was the registrant and owner of the domain name www.sslreview.com. This web site purported to provide independent, unbiased, third-party information and/or seemingly objective reviews of SSL certificate authorities, including the Defendant GeoTrust and the Plaintiffs XRAMP Technologies and XRAMP Security.

11. At all operative times, the Defendant Bailey, as Co-Founder and Vice President of Business Development for the Defendant GeoTrust, acted within the course and scope of his employment and/or agency relationship with the Defendant GeoTrust. The defendant GeoTrust is thus vicariously liable for the acts and omissions of its employee and/or agent, the Defendant Bailey.

12. The information published on the web site www.sslreview.com was anonymously published, edited, and/or approved jointly by the Defendant Bailey and the Defendant GeoTrust. The web site www.sslreview.com failed to state that essentially all of the contributors and/or authors of content on this site were previously employed by and/or affiliated with the Defendant GeoTrust.

13. Defendant Bailey and the Defendant GeoTrust conspired to hide the true origin and identity of the authors of content on the web site www.sslreview.com. A section of the web site originally captioned "About Us" expressly misrepresented that the site had "been written based on a number of contributions from numerous active participants in the industry, including industry experts that have been involved with Equifax, GeoTrust, Verisign, FreeSSL and Comodo." In addition, the Defendant Bailey registered the domain name using his home address as the registration address and his personal email address of chris_bailey@bus.emory.edu, rather than his GeoTrust email address.

14. The Defendant Bailey and the Defendant GeoTrust used the web site www.sslreview.com to publicize erroneous, false, biased and disparaging "reviews" and/or deceptive and misleading statements about the products and services offered by the Defendant GeoTrust's competitors, including the Plaintiffs XRAMP Technologies and XRAMP Security. Among other misrepresentations, the Defendants Bailey and GeoTrust stated that the Plaintiffs were a "temporary-pseudo certification authority," that they were "unstable" because they relied on certifications by others, and that they were an unreliable and/or untrustworthy source for SSL certificates.

15. The Defendants Bailey and GeoTrust advertised their web site www.sslreview.com heavily on Google and Yahoo, the largest search engines on the Internet. The Defendants deliberately promoted www.sslreview.com in order that many actual and prospective purchasers of SSL certificates would come across and ultimately review the materials posted on this web site.

16. The Defendant Bailey and the Defendant GeoTrust used the web site www.sslreview.com to deceive the public by unfairly advertising, promoting and enhancing the reputation of the Defendant GeoTrust's products and services. The Defendants Bailey and GeoTrust engaged in a pattern of false and misleading advertising, defamation, and unfair competition. These Defendants negligently, recklessly, willfully and/or intentionally conspired to divert potential customers away from the Plaintiffs XRAMP Technologies and XRAMP Security in order to sell more of GeoTrust's SSL certificates.

17. The Plaintiffs XRAMP Technologies and XRAMP Security complained about the Defendant GeoTrust's deceptive conduct to its General Counsel and to its Director of Sales of Web Trust Services repeatedly, but to no avail. Not until after the Plaintiffs XRAMP Technologies and XRAMP Security filed a lawsuit against the Defendant Bailey and the Defendant GeoTrust in the United States District Court, Western District of Texas in 2004 did the Defendants Bailey and GeoTrust cease their deceptive and/or willful misconduct, shut down the web site www.sslreview.com, re-direct Internet users to the Defendant GeoTrust's web site, and properly register the domain name sslreview.com to the Defendant GeoTrust.

18. The false, deceptive and disparaging statements made by the Defendant Bailey and the Defendant GeoTrust on its affiliated web site damaged and/or defamed the business reputation of the Plaintiffs XRAMP Technologies and XRAMP Security, caused the Plaintiffs to lose actual and/or potential sales, and caused them irreparable damage and harm in their industry.

## IV. CLAIMS FOR RELIEF.

### A. Fraudulent Misrepresentation and Concealment.

19. The Plaintiffs XRAMP Technologies and XRAMP Security repeat and re-allege each and every allegation contained in Paragraphs 1-18 of the Complaint as though fully set forth herein.

20. The Defendant Bailey and the Defendant GeoTrust, intentionally and/or recklessly, failed to represent the true origin and authorship of the web site www.sslreview.com and made deceptive, disparaging and/or misleading representations about the products and services offered by the Plaintiffs XRAMP Technologies and XRAMP Security, so as to induce reliance upon these misrepresentations by actual and/or prospective purchasers of SSL certificates.

21. As a result of these false, deceptive and/or reckless representations made by the Defendant Bailey and the Defendant GeoTrust on their affiliated web site, the business reputation of the Plaintiffs XRAMP Technologies and XRAMP Security was damaged, the Plaintiffs were caused to lose actual and/or potential sales, and the Plaintiffs suffered irreparable damage and harm in the SSL certificates industry and otherwise.

22. WHEREFORE, the Plaintiffs XRAMP Technologies and XRAMP Security seek monetary damages for loss of actual and/or potential sales and for injury to their business reputation, plus their costs, interest and attorney's fees, and such other and further relief as may be deemed equitable in the circumstances.

### B. Defamation and Libel.

23. The Plaintiffs XRAMP Technologies and XRAMP Security repeat and re-allege each and every allegation contained in Paragraphs 1-22 of the Complaint as though fully set forth herein.

24. The Defendant Bailey and the Defendant GeoTrust, intentionally and/or recklessly, published on their web site www.sslreview.com false, deceptive and/or misleading statements about the products and services offered by the Plaintiffs XRAMP Technologies and XRAMP Security, which statements were disparaging and derogatory.

25. The deceptive, derogatory and/or disparaging misrepresentations about the Plaintiffs XRAMP Technologies and XRAMP Security adversely affected their reputation in both the SSL certificates industry and otherwise, prejudiced the Plaintiffs in their course of operations, and wrongfully tended to deter others from doing business with the Plaintiffs.

26. As a result of these deceptive, disparaging, libelous and/or reckless misrepresentations made by the Defendant Bailey and the Defendant GeoTrust on their affiliated web site, the business reputation of the Plaintiffs XRAMP Technologies and XRAMP Security was damaged, the Plaintiffs were caused to lose actual and/or potential sales, and the Plaintiffs suffered irreparable damage and harm in the SSL certificates industry and otherwise.

27. WHEREFORE, the Plaintiffs XRAMP Technologies and XRAMP Security seek monetary damages for loss of actual and/or potential sales and for injury to their business reputation, plus their costs, interest and attorney's fees, and such other and further relief as may be deemed equitable in the circumstances.

## C. Interference with Advantageous Relation.

28. The Plaintiffs XRAMP Technologies and XRAMP Security repeat and re-allege each and every allegation contained in Paragraphs 1-27 of the Complaint as though fully set forth herein.

29. The Defendant Bailey and the Defendant GeoTrust, intentionally, recklessly and/or maliciously made deceptive, disparaging and/or libelous misrepresentations about the products and services offered by the Plaintiffs XRAMP Technologies and XRAMP Security, so as to interfere with the Plaintiffs' advantageous business interests. Such interference was accomplished without legal justification, without a lawful purpose and/or without a lawful means.

30. The Defendant Bailey and the Defendant GeoTrust interfered with the Plaintiffs' legally protected interests for the purpose of harming the Plaintiffs' advantageous reputation and relationships in the SSL certificate industry or otherwise and/or for the purpose of compelling the Plaintiffs' present or prospective customers to withhold their patronage of the Plaintiffs' products and services.

31. As a result of the Defendants' deceptive, reckless and/or libelous misrepresentations on their affiliated web site, the business reputation of the Plaintiffs XRAMP Technologies and XRAMP Security was damaged, the Plaintiffs were caused to lose actual and/or potential sales, and the Plaintiffs suffered irreparable damage and harm in the SSL certificates industry and otherwise.

32. WHEREFORE, the Plaintiffs XRAMP Technologies and XRAMP Security seek monetary damages for loss of actual and/or potential sales and for injury to their business reputation, plus their costs, interest and attorney's fees, and such other and further relief as may be deemed equitable in the circumstances.

### D. Civil Conspiracy.

33. The Plaintiffs XRAMP Technologies and XRAMP Security repeat and re-allege each and every allegation contained in Paragraphs 1-32 of the Complaint as though fully set forth herein.

34. The Defendant Bailey and the Defendant GeoTrust entered into a joint plan, and acted in unlawful combination, for the purpose of unjustifiably interfering with the business interests and reputation of the Plaintiffs XRAMP Technologies and XRAMP Security.

35. As a result of the Defendants' joint plan and unlawful combination to make, publish and promote false, deceptive, misleading and/or reckless misrepresentations about the products and services of the Plaintiffs XRAMP Technologies and XRAMP Security, the Plaintiffs' business reputation was damaged, the Plaintiffs were caused to lose actual and/or potential sales, and the Plaintiffs suffered irreparable damage and harm in the SSL certificates industry and otherwise.

36. WHEREFORE, the Plaintiffs XRAMP Technologies and XRAMP Security seek monetary damages for loss of actual and/or potential sales and for injury to their business reputation, plus their costs, interest and attorney's fees, and such other and further relief as may be deemed equitable in the circumstances.

### E. Unfair Competition – Violation of Business Protection Statute.

37. The Plaintiffs XRAMP Technologies and XRAMP Security repeat and re-allege each and every allegation contained in Paragraphs 1-36 of the Complaint as though fully set forth herein.

38. In the course of trade and commerce, the Defendant Bailey and the Defendant GeoTrust, intentionally and/or recklessly, failed to represent the true origin and authorship of the web site www.sslreview.com and made deceptive, disparaging and/or misleading representations about the products and services offered by the Plaintiffs XRAMP Technologies and XRAMP Security. Such conduct constituted unfair methods of competition and/or unfair or deceptive acts or practices within the meaning of Massachusetts General Laws, Chapter 93A, Section 11.

39. In the circumstances, the unfair methods of competition and/or unfair or deceptive acts or practices of the Defendants Bailey and GeoTrust constituted

willful and knowing violations of the law and of the Plaintiffs' rights and interests under Massachusetts General Laws, Chapter 93A, Section 11.

40. As a result of the Defendants' unfair methods of competition and/or the Defendants' unfair, deceptive, willful and/or knowing acts or practices, the business reputation of the Plaintiffs XRAMP Technologies and XRAMP Security was damaged, the Plaintiffs were caused to lose actual and/or potential sales, and the Plaintiffs suffered irreparable damage and harm in the SSL certificates industry and otherwise.

41. WHEREFORE, the Plaintiffs XRAMP Technologies and XRAMP Security seek monetary damages for loss of actual and/or potential sales and for injury to their business reputation; plus an award of up to three, but not less than two, times the amount of their actual damages; plus their costs, interest and attorney's fees; and such other and further relief as may be deemed equitable in the circumstances.

### F. Lanham Act – Trademark Infringement and Dilution.

42. The Plaintiffs XRAMP Technologies and XRAMP Security repeat and re-allege each and every allegation contained in Paragraphs 1-41 of the Complaint as though fully set forth herein.

43. By virtue of the Plaintiffs XRAMP Technologies and XRAMP Security's extensive use, advertising, promotion and sales of their products and services under the trade names and trade marks XRAMP, XRAMP TECHNOLOGIES, and XRAMP SECURITY SERVICES, these names and marks have become famous and have acquired a secondary meaning to and among the public in the United States.

44. The Defendant Bailey and the Defendant GeoTrust, have, intentionally and/or recklessly, used the Plaintiffs' names and marks, on their web site www.sslreview.com and/or in commerce, and have thereby infringed and/or diluted these names and marks within the meaning of Section 32 of the Lanham Act, 15 U.S.C. sec. 1114 and Section 43(c) of the Lanham Act, 15 U.S.C. sec.1125(c).

45. As a result of the Defendants' wrongful use, infringement and/or dilution of the Plaintiffs' trade names and trade marks, the business reputation of the Plaintiffs XRAMP Technologies and XRAMP Security has been unfairly damaged, the Plaintiffs were caused to lose actual and/or potential sales, and the Plaintiffs suffered irreparable damage and harm in the SSL certificates industry and otherwise. The Plaintiffs are entitled to an Order of this Court permanently enjoining the Defendants and their agents, employees and all others acting in concert with them, from ever again committing such unlawful conduct.

46. In the circumstances, the Defendants' wrongful use, infringement and/or dilution of the Plaintiffs' trade names and trade marks, the Defendants' unfair methods of competition and/or their unfair or deceptive acts or practices were willful, therefore the Plaintiffs XRAMP Technologies and XRAMP Security are entitled to the remedies set forth in 15 U.S.C. Section 1117(a).

47. WHEREFORE, the Plaintiffs XRAMP Technologies and XRAMP Security seek monetary damages for loss of actual and/or potential sales and for injury to their business reputation; plus an award pursuant to 15 U.S.C. Section 1117(a); plus their costs, interest and attorney's fees; plus permanent injunctive relief and such other and further relief as may be deemed equitable in the circumstances.

### G. Lanham Act – False Advertising and Unfair Competition.

48. The Plaintiffs XRAMP Technologies and XRAMP Security repeat and re-allege each and every allegation contained in Paragraphs 1-47 of the Complaint as though fully set forth herein.

49. The Defendant Bailey and the Defendant GeoTrust, have, intentionally, maliciously, recklessly and/or negligently, misrepresented the nature, characteristics or qualities of the Plaintiffs' goods and services on their web site www.sslreview.com within the meaning of Section 43(a) of the Lanham Act, 15 U.S.C. sec.1125(a).

50. The Defendants have made misrepresentations, intentionally or recklessly, for the purpose of diverting trade business away from the competitors of the Defendant GeoTrust, including the Plaintiffs XRAMP Technologies and XRAMP Security. The Defendants' acts and practices constitute false advertising and unfair competition affecting interstate commerce in violation of Section 43(a) of the Lanham Act, 15 U.S.C. sec. 1125(a).

51. As a result of the Defendants' wrongful conduct, the business reputation of the Plaintiffs XRAMP Technologies and XRAMP Security has been unfairly damaged, the Plaintiffs were caused to lose actual and/or potential sales, and the Plaintiffs suffered irreparable damage and harm in the SSL certificates industry and otherwise.

52. The Plaintiffs have no adequate remedy at law for the foregoing willful and wrongful conduct of the Defendants. Unless permanently restrained, the Defendant may continue to cause irreparable injury to the Plaintiffs' reputation and goodwill.

53. In the circumstances, the Plaintiffs are entitled to a Permanent Injunction that prohibits the Defendants and their agents, employees and all others acting in concert with them from, directly or indirectly: a) marketing, circulating, mailing, disseminating or otherwise distributing any material that incorporates any false,

misleading or deceptive statements or misrepresentations, b) engaging in any false advertising or unlawful or unfair competition with Plaintiffs, c) imitating, copying or making unauthorized use of the Plaintiffs' trademarks, or 4) assisting in or abetting any other person or entity in engaging in or performing any of the activities referred to in subparagraphs (a) through (c) above.

54. WHEREFORE, the Plaintiffs XRAMP Technologies and XRAMP Security seek monetary damages for loss of actual and/or potential sales and for injury to their business reputation; plus an award pursuant to 15 U.S.C. Section 1125(a); plus their costs, interest and attorney's fees; plus permanent injunctive relief and such other and further relief as may be deemed equitable in the circumstances.

### JURY DEMAND

The Plaintiffs XRAMP Technologies and XRAMP Security hereby demand a trial by jury as to all issues so triable.

Respectfully submitted,
By the Plaintiffs,

John W. Brister, Esq., BBO #057420
Leonard F. Zandrow, BBO #539030
BRISTER & ZANDROW, LLP
268 Summer Street
Boston, MA 02210-1108
617-292-4900
FAX: 617-292-4910

Date: June 27, 2005

# EXHIBIT B

SSL Certificate Providers List - Verisign, Thawte, GeoTrust, Baltimore, Entrust, Comodo InstantSSL, FreeSSL, GlobalSign and IPSCA   Page 1 of 3

Case 1:05-cv-11374-RCL      Document 10-16      Filed 03/17/2006      Page 2 of 6

# SSLreview



- SSL Technology FAQ
- SSL Providers - The List
- Credibility & Stability
- Pricing Comparisons
- Browser Recognition
- Market Share Summary
- Support Levels Offered
- Certificate Warranties
- Validation Levels
- Certificate Strength
- Re-branded SSL
- Wildcard SSL
- Reseller Programs

- View comparison chart

**SSLreview
See the Facts**

## The SSL Certificate & Certification Authority comparison website

FAQ | about us | advertisers | contact us | home

### SSL Providers - Who they are

**Top 2 Enterprise Class SSL Providers:**
Enterprise Class SSL Providers provide a number of SSL Certificate management tools specifically designed for large enterprise use. They also provide other enterprise level security products and services and offer dedicated enterprise class account managers and support. SSL Providers are listed in according to price - highest price first:

| Top 2 Enterprise Class SSL Providers | Website Address | Stability |
|---|---|---|
| VeriSign | www.verisign.com | Stable / Owns root |
| GeoTrust | www.geotrust.com | Stable / Owns root |

**Small to Medium Business (SMB) Providers:**
SSL Providers are listed in according to price - highest price at top:

| SMB Class SSL Provider | Website Address | Stability |
|---|---|---|
| VeriSign | www.verisign.com | Stable / Owns root |
| GeoTrust | www.geotrust.com | Stable / Owns root |
| thawte — A Verisign Company | www.thawte.com | Stable / Owns root |
| BALTIMORE | www.baltimore.com | Sold root to Betrusted |
| | | Stable |



Sponsorship

□ Professionalism
□ High quality
□ Efficiency

Sponsorship

WavePath
Professional Hosting more

$7.95/month

Sponsorship

FULLY FEATURED WEB HOSTING PLANS STARTING FROM JUST
$1.60
PER MONTH!!

BLADEBET

Sponsorship

Webarama

WEB HOSTING AUSTRALIA

Sponsorship

Meeting your Match is easier than you think...

Sponsorship

SSL Certificate Providers List - Verisign, Thawte, GeoTrust, Baltimore, Entrust, Comodo InstantSSL, FreeSSL, GlobalSign and IPSCA    Page 2 of 3

Case 1:05-cv-11374-RCL    Document 10-16    Filed 03/17/2006    Page 3 of 6

Advertisers click here for advertising opportunities on **SSLreview**

How to Link to SSLreview.com

| | Website Address | Stability |
|---|---|---|
| Betrusted | www.betrusted.com | Owns root. Comodo also uses this root Click for more |
| Entrust | www.entrust.com | **Stable** Owns root |
| GlobalSign | www.globalsign.com | **Stable** Owns root |
| ipsCA | www.ipsca.com | **Stable** Owns root |
| FreeSSL.com † | www.freessl.com † | **Stable** Owns root |

**Temporary-Pseudo CAs:**
Not sure what a Temporary-Pseudo CA is? Click here for definition.

| Temporary-Pseudo CA | Website Address | Stability |
|---|---|---|
| C·O·M·O·D·O | www.comodogroup.com | Unstable Does not own its own root - uses chained root provided by Betrusted Click for more |
| XRamp | www.xramp.com | Unstable Does not own its own root - uses chained root provided by GlobalSign Click for more |

Have you seen an SSL Certificate brand that is not featured above? They are probably an SSL Provider's reseller - click here to learn what to watch out for with resellers.

Comodo is a Temporary-Pseudo CA and does not own a trusted root - Comodo use the BeTrusted chaining program in order for their certificates to be trusted. The Betrusted root certificate used to issue Betrusted SSL certificates is also used to issue Comodo certificates. XRamp is also a Temporary-Pseudo CA and does not own a trusted root - XRamp use the GlobalSign chained program in order for their certificates to be trusted.

†FreeSSL.com previously issued its ChainedSSL certificate using the GTE CyberTrust root (which has recently been sold by Baltimore Technologies to BeTrusted) - this root is

SSL Certificate Providers List - Verisign, Thawte, GeoTrust, Baltimore, Entrust, Comodo InstantSSL, FreeSSL, GlobalSign and IPSCA    Page 3 of 3

the same root that is still used by Comodo to issue its InstantSSL certificates. Due to the instability and uncertainty surrounding the ongoing use of the Baltimore root, FreeSSL.com replaced the use of the Baltimore root with its own root (as also used to issue its FreeSSL certificates). As FreeSSL.com owns this root, its ChainedSSL brand no longer faces the instability issues still faced by Comodo and its InstantSSL brand.

© Copyright 2003 SSL Review. All Rights Reserved. info@sslreview.com

3/23/2004

Comparison Chart

## Compare the SSL Providers side by side

| CA Category | CA | SSL Certificate Product Name | Price (US$) | Stability | Single Cert Install | Suitable for | Issuance Speed | Validation Process | Encryption Strength | Support | Website Links |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Trusted CA | VeriSign | Commerce Site | 1395 | Stable Owns root | ✓ | Enterprise & SMB | 2 working days | Manual (?) | 40 / 128 bit | Tel, web, email | www.verisign.com / Click for Product / Resi Signup Links |
| | | Secure Site | 895 | Stable Owns root | ✓ | Enterprise & SMB | 2 working days | Manual (?) | 40 / 128 bit | Tel, web, email | |
| Trusted CA | GeoTrust | QuickSSL | 159 | Stable Owns root | ✓ | Enterprise & SMB | 10 minutes | Automated (?) | 128 bit | Tel, web, email | www.geotrust.com / www.geotrusteurope... |
| | | QuickSSL Premium | 229 | Stable Owns root | ✓ | Enterprise & SMB | 10 minutes | Automated (?) | 128 bit | Tel, web, email | www.geotrust.com / Click for Product / Signup Links |
| | | True Business ID | 299 | Stable Owns root | ✓ | Enterprise & SMB | 2 working days | Manual (?) | 128 bit | Tel, web, email | |
| Trusted CA | thawte A VeriSign Company | Web Server | 200 | Stable Owns root | ✓ | SMB | 2 working days | Manual (?) | 128 bit | Tel, web, email | www.thawte.com / Click for Product / Signup Links |
| | BALTIMORE | | | No longer available. Sold root to Betrusted | | | | | | | www.baltimore.com |
| Trusted CA | Betrusted. | SSL Certificate | 349 | Stable Owns root. Comodo also uses this root Click for more | ✓ | Enterprise | 2 working days | Manual (?) | 128 bit | Tel, web, email | www.betrusted.com / www.betrusted... |
| Trusted CA | | Webserver | 149 | Stable Owns root | ✗ | Enterprise & SMB | 2 working days | Manual (?) | 128 bit | Tel, web, email | www.entrust.com / Click for Product / Resi Signup Links |
| Trusted CA | GlobalSign | Secure Site | 149 | Stable Owns root | ✗ | SMB | 2 working days | Manual (?) | 128 bit | Tel, web, email | www.globalsign... |
| Trusted CA | ipsCA | SSL Certificate | 68 2 yr | Stable Owns root | ✗ | SMB | 10 minutes | Automated (?) | 128 bit | Tel, web, email | www.ipsca.com / Click for Product / Resi Signup Links |
| Trusted CA | FreeSSL.com | StarterSSL | 39 (usually $70) or Free* | Stable Owns root | ✓ | SMB | 10 minutes | Automated (?) | 128 bit | Tel, web, email | www.freessl.com / Click for Product / Resi Signup Links |

# Compare the SSL Providers side by side

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Temporary-Pseudo CA | C·O·M·O·D·O | InstantSSL† | 49 ⚠ Click for more | **Unstable** Does not own its own root - uses chained root provided by Betrusted ⚠ Click for more | ✗ | SMB | 2 - 4 working days | Manual ⑦ | 128 bit | Web, email ⑦ | www.comodogroup... |
| Temporary-Pseudo CA | XRamp | XRampSSL | 128 | **Unstable** Does not own its own root - uses chained root provided by GlobalSign XRamp is NOT WebTrust compliant ⚠ Click for more | ✗ | SMB | 2 working days | Manual ⑦ | 128 bit | Tel, web, email | www.xramp.co... |

† Comodo is a Temporary-Pseudo CA and does not own a trusted root - Comodo use the BeTrusted chaining program in order for their certificates to be trusted. The Betrusted root certificate used to issue Betrusted SSL certificates is also used to issue Comodo certificates.

XRamp is also a Temporary-Pseudo CA and does not own a trusted root - XRamp use the GlobalSign chaining program in order for their certificates to be trusted.

* FreeSSL.com is currently running an offer that allows Comodo InstantSSL customers to renew their existing InstantSSL certificates with a StarterSSL certificate free of charge. InstantSSL Wildcard certificate customers can also renew with a free ChainedSSL Wildcard certificate from FreeSSL.com worth $349.

**SMB = Small to Medium Businesses**

# EXHIBIT C

**JS 44** (Rev. 11/04)  **CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

XRAMP TECHNOLOGIES, INC.
XRAMP SECURITY SERVICES, INC.

**DEFENDANTS**

GEOTRUST, INC,
CHRISTOPHER BAILEY

**(b)** County of Residence of First Listed Plaintiff  SAN ANTONIO, TX
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant  NORFOLK, MA
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
JOHN W. BRISTER, BRISTER & ZANDROW LLP
268 SUMMER ST., BOSTON, MA 02210
617-202-4900

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff

☐ 2 U.S. Government Defendant

☐ 3 Federal Question (U.S. Government Not a Party)

☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane     ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product       Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability     ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel &       Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander     ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers'       Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability       Liability | ☐ 660 Occupational | ☒ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product   **PERSONAL PROPERTY** | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability     ☐ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle     ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle     ☐ 380 Other Personal | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability       Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal     ☐ 385 Property Damage | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury       Product Liability | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting     ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment       Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/       Habeas Corpus: | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations     ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare     ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities -     ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment     ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities -     ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from another district (specify)

☐ 6 Multidistrict Litigation

☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
15 USC 1114, 15 USC 1125

Brief description of cause:
FALSE ADVERTISING, UNFAIR COMPETITION, TRADEMARK DILUTION, LIBE

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ $4.5 MILLION

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):
JUDGE                               DOCKET NUMBER

DATE  6-28-2005

SIGNATURE OF ATTORNEY OF RECORD  *John W. Brister*

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

1. Title of case (name of first party on each side only)   XRAMP TECHNOLOGIES, INC. ET AL V. GEOTRUST, INC. ET AL.

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

   [ ]   I.     160, 410, 470, 535, R.23, REGARDLESS OF NATURE OF SUIT.

   [X]   II.    195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730,     *Also complete AO 120 or AO 121
                740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.     for patent, trademark or copyright cases

   [ ]   III.   110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
                315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
                380, 385, 450, 891.

   [ ]   IV.    220, 422, 423, 430, 460, 480, 490, 510, 530, 610, 620, 630, 640, 650, 660,
                690, 810, 861-865, 870, 871, 875, 900.

   [ ]   V.     150, 152, 153.

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?
   YES [ ]   NO [X]

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?   (See 28 USC §2403)
   YES [ ]   NO [X]

   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?
   YES [ ]   NO [ ]

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?
   YES [ ]   NO [ ]

7. Do **all** of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).
   YES [ ]   NO [X]

   A.   If yes, in which division do **all** of the non-governmental parties reside?

        Eastern Division [ ]     Central Division [ ]     Western Division [ ]

   B.   If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

        Eastern Division [X]     Central Division [ ]     Western Division [ ]

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)
   YES [ ]   NO [ ]

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME   JOHN W. GRISTER, GRISTER & ZANDROWS LLP

ADDRESS   268 SUMMER ST., BOSTON, MA 02210

TELEPHONE NO.   617-292-4900

(CategoryForm.wpd - 5/2/05)

# EXHIBIT D

UNITED STATED DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| XRAMP TECHNOLOGIES. INC. and XRAMP SECURITY SERVICES, INC., | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| GEOTRUST, INC. and CHRISTOPHER BAILEY, | ) ) ) ) | Civil Action No. 05-11374-RCL |
| Defendants. | ) ) | |

|  |  |
|---|---|
| GEOTRUST, INC., | ) ) |
| Counterclaim Plaintiff, | ) ) |
| v. | ) ) |
| XRAMP TECHNOLOGIES. INC. and XRAMP SECURITY SERVICES, INC. | ) ) ) |
| Counterclaim Defendants. | ) ) |

## JOINT LOCAL RULE 16.1 STATEMENT

Pursuant to Fed. R. Civ. P. 16 and Local Rule 16.1, GeoTrust Inc. ("GeoTrust") and

Christopher Bailey ("Mr. Bailey") (collectively, the "GeoTrust Parties") and XRamp

Technologies Inc. and XRamp Security Services, Inc. (collectively, "XRamp") submit the

following statement.

## I.  PARTIES' STATEMENT OF THEIR POSITIONS

### A.    XRamp's Position

As set forth in its complaint XRamp alleges that the defendants GeoTrust, Inc. and its

Senior Vice President of Business Development, Christopher Bailey, created and published a

web site called sslreview.com which purported to be an independent source of unbiased reviews of SSL certificate providers when in fact it provided false and misleading information regarding competitors including XRamp. As a result, XRamp suffered loss of business reputation which caused it to lose sales of its products and services, losses from which it has not recovered and are believed to be permanent.

**B.    GeoTrust Parties' Position**

The GeoTrust Parties' position is that any statement contained on sslreview.com was truthful, was not misleading, and did not cause customer confusion, let alone a loss of sales to XRamp. Moreover, contrary to the allegations by XRamp, statements on the sslreview.com website identified GeoTrust as the sponsor of the site. Indeed, XRamp specifically requested that GeoTrust include a description of XRamp's product and services on sslreviw.com.

With respect to its counterclaims, GeoTrust expects that the evidence will demonstrate that XRamp sent unsolicited, false and misleading email to GeoTrust customers, in which XRamp invited GeoTrust customers to "renew" their SSL certificates, without disclosing that the "renewed" certificates would be provided by XRamp and not GeoTrust. Those emails were false, deceptive and misleading, and caused customer confusion and actual money damages to GeoTrust.

## II. PROPOSED SCHEDULE FOR DISCOVERY AND DISPOSITIVE MOTIONS

The parties agree that the following pre-trial schedule should permit sufficient time for the completion of discovery and the filing of dispositive motions.

A.    Rule 26(a) Initial Disclosures – November 23, 2005

B.    Fact Discovery Concluded – May 31, 2006

C.      Expert Reports Due from both parties in support of the Complaint and

Counterclaim – June 30, 2006

D.      Expert Reports Due From both Parties with respect to defenses to the Complaint

and Counterclaim – July 31, 2006

E.      Expert Discovery Completed – September 30, 2006

F.      Rule 56 Motions Filed – November 1, 2006

The parties expect to complete discovery within the limits on discovery events as set out

in Fed. R. Civ. P. 26(b).

## III. CERTIFICATIONS

Counsel for each party hereby certifies that they have conferred with their clients (a) with

a view toward establishing a budget for conducting the full course – and various alternative

courses – for litigation, and (b) to consider the resolution of the litigation through the use of

alternative dispute resolution.


XRAMP TECHNOLOGIES, INC.          GEOTRUST, INC. and
and XRAMP SECURITY SERVICES, INC.  CHRISTOPHER BAILEY


By their attorneys,               By their attorneys,


/s/ John W. Brister              /s/ Daniel Tighe
_____          _____
John W. Brister (BBO 057420)      Daniel P. Tighe (BBO# 556583)
Leonard F. Zandrow (BBO 539030)   Griesinger, Tighe & Maffei, LLP
BRISTER & ZANDROW, LLP            176 Federal St.
268 Summer St.                    Boston, MA 02110
Boston, MA 02210-1108            (617) 542-9900
(617) 292-4900                    (617) 542-0900 (fax)
(617) 292-4910 (fax)


Date: November 3, 2005


3

# EXHIBIT E

**FILE COPY**

## GRIESINGER, TIGHE & MAFFEI, LLP

Attorneys at Law
176 Federal Street
Boston, Massachusetts 02110

TELEPHONE (617) 542-9900
FACSIMILE (617) 542-0900

Daniel P. Tighe
(617)603-0918
dtighe@gtmllp.com

November 23, 2005

**Via Hand Delivery**

John W. Brister, Esquire
Brister & Zandrow, L.L.P.
Counselors at Law
268 Summer Street
Boston, MA  02210-1108

      Re:    Xramp v. Geo Trust

Dear Jack:

    I enclose my clients Rule 26(a)(1) Initial Disclosures along with our initial document production, labeled G001-G296.

              Very truly yours,

              Daniel P. Tighe

DPT:jv
cc:  Carolyn Oldenburg, Esq.
Enclosure

# B к i S T E R  &  Z A N D R O W, l.l.p.

COUNSELORS AT LAW

268 SUMMER STREET
BOSTON, MASSACHUSETTS 02210-1108
TELEPHONE (617) 292-4900
FACSIMILE (617) 292-4910
http://www.BZ-Law.com

JOHN W. BRISTER
LEONARD F. ZANDROW, JR.

WRITER'S DIRECT DIAL NUMBER
(617) 292-4901

February 8, 2006

Daniel P. Tighe, Esq.
Griesinger, Tighe & Maffei, LLP
176 Federal Street
Boston, MA 02110

Re: **Xramp v. GeoTrust**, Civil Action No. 05-11374-RCL

Dear Mr. Tighe:

Please find enclosed the Plaintiffs Xramp Technologies, Inc.'s and Xramp Security Services, Inc.'s Rule 26(a)(1) initial disclosures along with the Plaintiffs' initial document production.

In addition, please be advised that counsel for the Plaintiffs has gathered copies of all documents, correspondence and/or exhibits which became available during the course of prior, related litigation between these same parties in Texas, which action was ultimately dismissed on jurisdictional grounds. These documents, correspondence and/or exhibits are quite voluminous. Nonetheless, these documents, correspondence and/or exhibits will be available to counsel for GeoTrust for inspection and copying in the offices of Plaintiffs' counsel in Boston at the convenience of GeoTrust's counsel..

Thank you for your accommodation.

Yours very truly,

John W. Brister

Enclosures

# EXHIBIT F

UNITED STATED DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| XRAMP TECHNOLOGIES, INC. and<br>XRAMP SECURITY SERVICES, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>GEOTRUST, INC. and<br>CHRISTOPHER BAILEY,<br><br>Defendants.<br><br>———————————————————<br><br>GEOTRUST, INC.,<br><br>Counterclaim Plaintiff,<br><br>v.<br><br>XRAMP TECHNOLOGIES. INC. and<br>XRAMP SECURITY SERVICES, INC.<br><br>Counterclaim Defendants. | Civil Action No. 05-11374-RCL |

## **GEOTRUST'S FIRST SET OF INTERROGATORIES**

The defendants GeoTrust, Inc. and Christopher Bailey and plaintiff-in-counterclaim

GeoTrust, Inc. (collectively, "GeoTrust"), hereby request, pursuant to Fed. R. Civ. P. 26 and 33,

that the defendants, XRamp Technologies, Inc. and XRamp Security Services, Inc. (collectively,

unless context suggests otherwise, "XRamp"), answer the following interrogatories within forty-

five days from the date of service hereof.

## **Definitions**

For the purposes of this request, the defendant adopts and incorporates herein by

reference the "Uniform Definitions in Discovery Requests" contained in Rule 26.5 of the Local

Rules of the United States District Court for the District of Massachusetts. The following additional terms shall have the meanings set forth below:

1.    "GeoTrust" means GeoTrust, Inc. Mr. Bailey and GeoTrust, Inc.'s current and former employees, agents, representatives, attorneys, subsidiaries and affiliates.

2.    "XRamp" or "you" means  XRamp Technologies, Inc. and XRamp Security Services, Inc. and their current and former employees, agents, representatives, attorneys, subsidiaries and affiliates and any other persons or entities through which XRamp Technologies, Inc. and XRamp Security Services, Inc. have conducted business.

3.    The "Complaint" means the Complaint filed by XRamp in this action on or about June 29, 2005.

4.    The "Counterclaim Answer" means the Answer and Affirmative Defenses of XRamp Technologies, Inc. and XRamp Security Services, Inc. to Counterclaim of GeoTrust, Inc. filed on or about September 15, 2005.

5.    "Communication" means any oral, written or electronic transmittal, disclosure, or exchange of information or request for information made from one person to another person, whether made in person, electronically, by telephone or by any other means, and includes any document made to record a communication, fact, idea, statement, inquiry, opinion. belief, or otherwise.

6.    "Person" means:  (a) any natural person; or (b) any entity, including but not limited to, any corporation, partnership, joint venture, firm, proprietorship, cooperative, trust, board, authority, commission, association, institute, club, group, society, or any governmental or public agency, department, bureau, or political subdivision.

7.     "Relating to" or "related to" means concerning, referring to, alluding to, responding to, in connection with, commenting on, in response to, about, regarding, announcing, explaining, discussing, showing, describing, studying, reflecting, analyzing, or constituting.

### Interrogatories

1.     For each statement that XRamp contends: (a) was made by GeoTrust; (b) was "erroneous," "false," "disparaging," "unfair" or "misleading" and/or (c) in any way supports any of the claims asserted by XRamp in this case, please:

        a.     identify the statement in as much detail as possible;

        b.     state the date or dates when the statement was made;

        c.     identify the media through which the statement was made (i.e., on a particular website address or otherwise);

        d.     identify all facts, documents or other information that support your contention that the statement was erroneous, false, disparaging, unfair, misleading or otherwise supports the claims set forth in the Complaint;

        e.     identify any customer, potential customer or other third party that you contend was confused, deceived and/or mislead by the statement; and

        f.     explain the basis of your knowledge that any third party identified in response to section (f) above was affected by the statement.

2.     For each month from January 2002 through December 2005, inclusive, please state the following:

        a.     XRamp Technologies, Inc.'s total revenues;

        b.     XRamp Technologies, Inc.'s revenues broken down by product line;

        c.     XRamp Technologies, Inc.'s profit margin;

d.    XRamp Technologies, Inc.'s profit margin broken down by product line.

3.    For each month from January 2002 through December 2005, inclusive, please state the following:

a.    XRamp Security Services, Inc.'s total revenues;

b.    XRamp Security Services, Inc.'s revenues broken down by product line;

c.    XRamp Security Services, Inc.'s profit margin; and

d.    XRamp Security Services, Inc.'s profit margin broken down by product line.

4.    Please provide a full and complete breakdown of any and all damages you claim to have suffered as a result of the allegations contained in the Complaint.

5.    Please state when, if at all, XRamp acquired and or developed its own 'trusted root certificate.'

6.    Please state whether XRamp has a contractual or other relationship with GlobalSign, N.V. ("GlobalSign") pursuant to which XRamp pays or has paid royalties, license or other fees to GlobalSign, and if so, please state what services GlobalSign provides to XRamp, the terms of the arrangement and when the arrangement is due to expire.

7.    Please state whether XRamp has ever included the following statement on its website, and if so: (a) state the dates that the statement appeared on XRamp's website; and (b) identify the "web server software" that is referenced in the statement:

> We may occasionally use the term 'renew' when detailing the process that you must go through with your web server software to purchase a new SSL certificate from XRamp.  This is because some web server software requires you to select the 'Renew your Existing Certificate" option in order to leave your existing SSL

4

certificate in place and create a CSR that can be used to purchase
your new certificate from XRamp SSL.

8.      Please identify the individuals responsible for sending email messages to owners
of GeoTrust SSL certificates between January 2002 and the present encouraging recipients to
'renew' their SSL certificates with XRamp.

9.      Please state how many email messages XRamp sent between January 2002 and
the present to then-owners of GeoTrust SSL certificates encouraging them to 'renew' their SSL
certificates; and identify date the message was sent and the sender and the recipient of each such
email message.

10.     Please identify all other litigation matters to which XRamp has been a party since
2001 which involved allegations about the accuracy of statements made to consumers about SSL
certificates and for each such matter, please identify: (a) the parties to the case; (b) the
jurisdiction in which the case was filed; (c) the docket number of the case; (d) the current status
of the case; and (e) if the case was settled, the terms of the settlement.

11.     Identify each person whom you expect to call as a witness at trial.  For each such
witness, state the subject matter(s) and substance of the facts to which each witness is expected
to testify.

12.     Identify each person whom you expect to call as an expert witness at trial.  For
each such expert witness state:

   a.   Their qualifications, education and professional experience;

   b.   The subject matter(s) on which each expert is expected to testify; and

   c.   The substance of the facts and opinions to which each expert identified above
        is expected to testify together with a summary of the grounds for each such
        opinion.

13.     Please identify all persons who assisted you in preparing answers to these

interrogatories.

GEOTRUST, INC. and
CHRISTOPHER BAILEY

By their attorneys,

_____
Daniel P. Tighe (BBO# 556583)
Griesinger, Tighe & Maffei, LLP
176 Federal St.
Boston, MA 02110
(617) 542-9900
(617) 542-0900 (fax)

Dated:  December 1, 2005

I hereby certify that a true copy
of the above document was
served upon the attorney of
record for each other party
by mail/hand/facsimile on: 12/1/05

_____

UNITED STATED DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| XRAMP TECHNOLOGIES. INC. and<br>XRAMP SECURITY SERVICES, INC.,<br><br>      Plaintiffs,<br><br>v.<br><br>GEOTRUST, INC. and<br>CHRISTOPHER BAILEY,<br><br>      Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No. 05-11374-RCL

| | |
|---|---|
| GEOTRUST, INC.,<br><br>      Counterclaim Plaintiff,<br><br>v.<br><br>XRAMP TECHNOLOGIES. INC. and<br>XRAMP SECURITY SERVICES, INC.<br><br>      Counterclaim Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## <u>GEOTRUST'S FIRST REQUEST FOR THE PRODUCTION OF DOCUMENTS</u>

The defendants GeoTrust, Inc. and Christopher Bailey and plaintiff -in-counterclaim

GeoTrust, Inc. (collectively, "GeoTrust"), hereby request, pursuant to Fed. R. Civ. P. 26 and 34,

that the defendants, XRamp Technologies, Inc. and XRamp Security Services, Inc. (collectively,

unless context suggests otherwise, "XRamp"), produce for inspection and copying each of the

documents and things identified below within thirty (30) days from the date of service of these

requests, at the offices of Griesinger, Tighe & Maffei, LLP, 176 Federal Street, Boston,

Massachusetts.

<u>DEFINITIONS AND GENERAL INSTRUCTIONS</u>

For the purposes of this request, GeoTrust adopts and incorporates herein by reference the "Uniform Definitions in Discovery Requests" contained in Rule 26.5 of the Local Rules of the United States District Court for the District of Massachusetts. The following additional terms shall have the meanings set forth below:

1.    "GeoTrust" means GeoTrust, Inc. Mr. Bailey and GeoTrust, Inc.'s current and former employees, agents, representatives, attorneys, subsidiaries and affiliates.

2.    "XRamp" or "you" means XRamp Technologies, Inc. and XRamp Security Services, Inc. and their current and former employees, agents, representatives, attorneys, subsidiaries and affiliates and any other persons or entities through which XRamp Technologies, Inc. and XRamp Security Services, Inc. have conducted business.

3.    The "Complaint" means the Complaint filed by XRamp in this action on or about June 29, 2005.

4.    The "Counterclaim Answer" means the Answer and Affirmative Defenses of XRamp Technologies, Inc. and XRamp Security Services, Inc. to Counterclaim of GeoTrust, Inc. filed on or about September 15, 2005.

5.    "Communication" means any oral, written or electronic transmittal, disclosure, or exchange of information or request for information made from one person to another person, whether made in person, electronically, by telephone or by any other means, and includes any document made to record a communication, fact, idea, statement, inquiry, opinion, belief, or otherwise.

6.    "Person" means:  (a) any natural person; or (b) any entity, including but not limited to, any corporation, partnership, joint venture, firm, proprietorship, cooperative, trust,

board, authority, commission, association, institute, club, group, society, or any governmental or public agency, department, bureau, or political subdivision.

7.    "Document" means the original (or identical duplicate when the original is not available) of all tangible and intangible objects from which information may be derived or discerned, and specifically includes all forms of Electronic Data and other information stored on Electronic Media, as well as any non-identical document or draft bearing any mark, notation, initial, stamped indicia, comment, or character not part of the original text, which shall be considered a separate document.

8.    "Electronic Data" means the original and any non-identical copies of writings or items stored on Electronic Media and/or writings or items inscribed by mechanical, facsimile, electronic, magnetic, digital, or other similar means, as well as the file, folder tabs, containers, and labels appended to or relating to any physical storage device associated with each original and/or copy.

9.    "Electronic Media" means any magnetic, optical, or other storage media device used to record Electronic Data, either on a computer or a data network (i.e., any hardware, software, or wireless combination that connects two or more computers together and which allows the computers to share or transfer data between them).

10.    "Person" means:  (a) any natural person; or (b) any entity, including but not limited to, any corporation, partnership, joint venture, firm, proprietorship, cooperative, trust, board, authority, commission, association, institute, club, group, society, or any governmental or public agency, department, bureau, or political subdivision.

11.    "Relating to" or "related to" means concerning, referring to, alluding to, responding to, in connection with, commenting on, in response to, about, regarding, announcing, explaining, discussing, showing, describing, studying, reflecting, analyzing, or constituting.

12.    Unless otherwise stated herein, each and every request set forth in the numbered paragraphs below seeks all responsive Documents in the possession, control, or custody of XRamp including its attorneys, officers, directors, employees, agents, parents, subsidiaries, and affiliates, as well as in the possession of any attorneys, officers, directors, employees, and/or agents of any such parents, subsidiaries, and affiliates.

13.    In the event that any Documents responsive to the Requests for Documents set forth in the numbered paragraphs below were, but no longer are, within the possession, control or custody of XRamp, state the circumstances and timing of the loss of possession, control, or custody, and the name of the person or entity to which possession was transferred, if any.

14.    Each Request for Documents is a request for the original (or copy when the original is not available) of the final version of such Documents, as well as any non-identical prior drafts or non-identical copies of such documents, including those that are non-identical by reason of notations or markings on the copies.

15.    Where information responsive to the requests below is Electronic Data or is stored on Electronic Media, GeoTrust seeks access to the electronic copies of responsive information (together with instructions and programs necessary to search or retrieve such data), including all attachments and enclosures to any responsive information, which shall not be separated from the items to which they are attached or enclosed.

16.    If you claim that any Documents are privileged or otherwise protected from discovery, then for all such Documents, please provide the following information:

a)    The nature of the Document (i.e., letter, memorandum, etc.) and the general subject matter;

b)    The date of the creation or transmittal of the Document;

c)    The name and title of the author of the Document;

d)    The name, title, and address of those persons or entities to whom the Document was sent and those who at any time possessed the Document;

e)    A full explanation of the privilege or exclusion claimed and the factual and legal basis of that claim, including a description of the material contained in the Document which you claim to be privileged or excluded; and

f)    Where the document is presently located.

17.    All use of language in these requests which appears in the conjunctive form specifically includes the disjunctive form, and vice versa.  Similarly, all words which are used in their singular form include the plural form, and vice versa.

18.    If no Documents exist which are responsive to a particular request, please state that no responsive Documents exist.

19.    These requests are continuing and require the service of a supplemental response and the timely production of additional Documents and things pursuant to Federal Rule of Civil Procedure 26(e) in the event XRamp obtains, discovers, or locates supplemental responsive Documents.

20.    The Documents requested shall be produced or reproduced either as they are kept in the usual course of business (i.e., a document that is part of a file, docket, or other grouping should be physically produced together with all other documents from said file, document, or other grouping responsive to a request) or shall be organized to correspond with the categories in this Request in accordance with Federal Rule of Civil Procedure 34(b).

## REQUESTS FOR DOCUMENTS

1.     All Documents related to GeoTrust, including, but not limited to, correspondence, internal memoranda, email, notes and contracts.

2.     All Documents related to the XRamp's relationship with VeriSign, N.V or any company affiliated with VeriSign N.V., including contracts, correspondence, notes, email and internal memoranda related to VeriSign.

3.     All Documents that support the contention that statements made by GeoTrust are false, misleading, deceptive or the cause of customer confusion.

4.     All financial statements, including balance sheets, statements of operations, profit and loss  statements and statements of cash flows for XRamp Technologies, Inc. for all periods between 2001 and 2005 inclusive.

5.     All financial statements, including balance sheets, statements of operations, profit and loss  statements and statements of cash flows for XRamp Security Services, Inc. for all periods between 2001 and 2005, inclusive.

6.     All consolidated financial statements, including balance sheets, statements of operations, profit and loss statements and statements of cash flows for XRamp for all periods between 2001 and 2005, inclusive.

7.     All Documents related to email sent by or on behalf of GeoTrust to persons or entities believed to be GeoTrust customers between 2001 and 2005, inclusive, including printouts of the email messages and any responses.

8.     All documents related to any and all claims that XRamp confused or misled consumers by its use of the word "renew" in email soliciting business or otherwise, including Documents related to any litigation matter in which such claims were made .

6

9.    All documents related to any statements on XRamp's website about what XRamp means when it uses the word 'renew,' including the text of any such statements.

10.    All documents related to any claim that XRamp was damaged by the conduct of GeoTrrust.

11.    All documents that evidence any customer confusion caused by any statements by GeoTrust.

12.    Any Communications with third parties, including Comodo Group Inc. or and persons or entities employed by or affiliated with Comodo Group Inc., related to the subject matter set forth in the Complaint or the Counterclaim  Answer, any claim asserted by XRamp against GeoTrust (in any jurisdiction) or any other actual or contemplated litigation.


GEOTRUST, INC. and
CHRISTOPHER BAILEY

By their attorneys,

_____
Daniel P. Tighe (BBO# 556583)
Griesinger, Tighe & Maffei, LLP
176 Federal St.
Boston, MA 02110
(617) 542-9900
(617) 542-0900 (fax)


Date: December 1, 2005

I hereby certify that a true copy
of the above document was
served upon the attorney of
record for each other party
by mail/hand/facsimile on:  12/1/05

_____   _____

and

7

# EXHIBIT G

GRIESINGER, TIGHE & MAFFEI, LLP

Attorneys at Law

176 Federal Street

Boston, Massachusetts 02110

**FILE COPY**

TELEPHONE (617) 542-9900
FACSIMILE (617) 542-0900

Daniel P. Tighe
(617)603-0918
dtighe@gtmllp.com

January 18, 2006

John W. Brister, Esquire
Brister & Zandrow, L.L.P.
Counselors at Law
268 Summer Street
Boston, MA  02210-1108

      Re:   <u>Xramp v. Geo Trust</u>

Dear Jack:

     Your clients' Rule 26(a)(1) initial disclosures, responses to Geo Trust's First Request for the Production of Documents and Response to Geo Trust's Interrogatories are all long overdue.  Please provide that information immediately.

                    Very truly yours,

                    Daniel P. Tighe

DPT:jv
cc:   Carolyn Oldenburg, Esq.

GRIESINGER, TIGHE & MAFFEI, LLP

Attorneys at Law

176 Federal Street

Boston, Massachusetts 02110

FILE COPY

TELEPHONE (617) 542-9900

FACSIMILE (617) 542-0900

Daniel P. Tighe

(617) 603-0918

dtighe@gtmllp.com

January 31, 2006

John W. Brister, Esquire

Brister & Zandrow, L.L.P.

Counselors at Law

268 Summer Street

Boston, MA  02210-1108

Re:    Xramp v. Geo Trust

Dear Jack:

I am writing, again, to raise with you the issue of your client's discovery obligations.  Having not heard from you in response to prior communications, I am afraid to say that if we do not receive full and complete responses by February 6, we will have no choice but to move to compel and for costs.  I hope this will be unnecessary.

Very truly yours,

Daniel P. Tighe

DPT:jv

cc:  Carolyn Oldenburg, Esquire

GRIESINGER, TIGHE & MAFFEI, LLP

Attorneys at Law

176 Federal Street

Boston, Massachusetts 02110

TELEPHONE (617) 542-9900
FACSIMILE (617) 542-0900

Daniel P. Tighe
(617) 603-0918
dtighe@gtmllp.com

February 8, 2006

**Via Facsimile and First Class Mail**

John W. Brister, Esquire
Brister & Zandrow, L.L.P.
Counselors at Law
268 Summer Street
Boston, MA  02210-1108

      Re:   Xramp v. Geo Trust

Dear Jack:

On February 6, you called me at the end of the day to tell me that we would be receiving your clients' long overdue discovery responses by hand delivery on February 7. Based on that representation, I did not file a motion to compel as was discussed in my January 31 letter. Yet February 7 came and went with no delivery, no phone call and no discovery responses.

If I do not receive complete responses today, I will file a motion to compel and for costs.

Very truly yours,

Daniel P. Tighe

DPT:jv
cc: Carolyn Oldenburg, Esquire

# GRIESINGER, TIGHE & MAFFEI, LLP

Attorneys at Law
176 Federal Street
Boston, Massachusetts 02110

TELEPHONE (617) 542-9900
FACSIMILE (617) 542-0900



Daniel P. Tighe
(617) 603-0918
dtighe@gtmllp.com

February 15, 2006

**Via Facsimile and First Class Mail**

John W. Brister, Esquire
Brister & Zandrow, L.L.P.
Counselors at Law
268 Summer Street
Boston, MA  02210-1108

      Re:    <u>Xramp v. Geo Trust</u>

Dear Jack:

I am writing to confirm our recent conversation about your clients' discovery responses. You told me that you would call me back today with a firm date by which your clients will provide full responses to Geo Trust's document requests and interrogatories.

As I told you, if you cannot commit to providing these responses within the next few days, (i.e., before the end of this week), I will take it up with the Court.

Also, to confirm, please copy and provide all discoverable documents (including whatever you have related to the Texas case) as soon as possible. I would also like a firm commitment from you for when your client will have produced all responsive documents.

Very truly yours,

Daniel P. Tighe

DPT:jv
cc:    Carolyn Oldenburg, Esquire

# GRIESINGER, TIGHE & MAFFEI, LLP

Attorneys at Law
176 Federal Street
Boston, Massachusetts 02110

**FILE COPY**

TELEPHONE (617) 542-9900
FACSIMILE (617) 542-0900

Daniel P. Tighe
(617) 603-0918
dtighe@gtmllp.com

February 16, 2006

**<u>Via Facsimile and First Class Mail</u>**

John W. Brister, Esquire
Brister & Zandrow, L.L.P.
Counselors at Law
268 Summer Street
Boston, MA  02210-1108

   Re: <u>Xramp v. GeoTrust</u>

Dear Jack:

  I am writing to confirm that your clients will provide full written response to GeoTrust's interrogatories and document requests no later than Tuesday, February 28.

      Very truly yours,

      Daniel P. Tighe

DPT:jv
cc: Carolyn Oldenburg, Esquire

## GRIESINGER, TIGHE & MAFFEI, LLP

Attorneys at Law
176 Federal Street
Boston, Massachusetts 02110

TELEPHONE (617) 542-9900
FACSIMILE (617) 542-0900

Daniel P. Tighe
(617) 603-0918
dtighe@gtmllp.com

February 28, 2006

**Via Facsimile and First Class Mail**

John W. Brister, Esquire
Brister & Zandrow, L.L.P.
Counselors at Law
268 Summer Street
Boston, MA  02210-1108

Re:    Xramp v. GeoTrust,  C.A.No. 11374-RCL

Dear Jack:

I am writing pursuant to Local Rule 37.1 about XRamp Security Services, Inc,
and XRamp Technologies, Inc.'s (collectively, "XRamp"): (a) document production to
date; (b) responses to GeoTrust Inc.'s ("GeoTrust") First Set of Interrogatories (which
you provided on February 21), and (c) responses to GeoTrust's First Request for the
Production of Documents (provided on February 22).

   *A. Document Production to Date*

The first issue to address is the fact that XRamp has not produced documents that
it has agreed to produced, nor has it set a date by which it will produce those documents.

XRamp has produced documents on two occasions.

On February 8, 2006, it made its initial disclosures under Rule 26(a)(1) that were
due on November 23.  Xramp produced 55 pages of documents.

On February 22, XRamp produced documents in response to GeoTrust's First
Request For the Production of Documents.   In that production, XRamp produced a
Motion for Leave to File Second Amended Complaint that was filed in a lawsuit
captioned Verisign, Inc., et al v. XRamp, et al, (W.D. Tex., Case No. SA-03-CV-1131)
(the "Verisign Litigation"), two supporting declarations (from lawyers for Verisign) and
12 pages of email.

You have agreed to produce, but you have not produced: (a) documents related to the financial condition of XRamp; (b) documents related to the Verisign Litigation; and (c) documents related to this case when it was pending in Texas.

I have been inquiring repeatedly when you will produce the materials that you have agreed to produce, including by letters dated January 18, 31, February 8, 10, 15 and 16. Nonetheless, you will not commit to a date by which you will produce the requested documents. Rather, you have told me that you will ask XRamp to copy the requested material, that some of the requested files are "in a box at XRamp" and you have informed me that XRamp's accountant has been busy.

This delay is simply unacceptable. Fact discovery is set to close in three months. GeoTrust's document requests were served on XRamp on December 1, 2005 and you have made repeated promises of a full production.

If I do not have those documents by the time that we have our Rule 37.1 conference, I will raise the matter with the Court.

    B.    *Damages Information.*

Rule 26(a)(1)(C) requires the production of "a computation of any category of damages claimed by the disclosing party, making available for inspection and copying as under Rule 34 the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based…" Similarly, our document Request no.10 seeks all documents related to any damages claim.

To date, the only damages documents you have produced are a March 9, 2005 settlement demand and a graph that purports to compare XRamp's "month over month growth" and "projected vs. actual sales." You agreed to produce (but you have not produced) "financial statements." But you have not produced any other documents related to alleged damages.

Please be advised that Rule 26(a)(1)(c) and Request No. 10 require more than financial statements. We are entitled to receive all non-privileged data upon which you base your damages calculation. That includes, at a minimum, actual and projected XRamp sales and income data as well as any industry sales information upon which you have relied to make your damages assessment.

While I understand that you intend to offer an expert report, there is no reason that we should have to wait for the expert report for this information. There had to be some data upon which XRamp based its demand for damages that appears in the Complaint and in the March 9 letter. Please produce that information immediately.

C.     *Verisign Litigation*

GeoTrust's Request No. 7 seeks all documents related to Verisign. Request No. 8 seeks documents related to the Verisign Litigation. You responded that XRamp has no documents related to Verisign other than litigation documents, which you have offered to, but have not, produced. In my conversation with you last week, you also stated however that you will not produce any settlement agreement because you said it was "confidential."

Please immediately copy and produce all documents related to the Verisign Litigation, including all transcripts and all documents that were produced by either side. As you know, Verisign sued XRamp over nearly the same conduct that is the subject of GeoTrust's counterclaim.

With respect to any settlement agreement, I informed you that I would agree to a reasonable confidentiality agreement by which we agreed to treat the agreement as confidential. You told me that that would not satisfy your concerns. Barring a change in position, we will raise that matter with the court.

D.     *Global Sign Documents*

In Interrogatory no. 6, GeoTrust sought information about XRamp's relationship with GlobalSign. Document Request No.3 seeks all documents "that support the contention that statements made by GeoTrust are false, misleading, deceptive or the cause of customer confusion."

As you know, one of he central issues in the case is XRamp's claim that GeoTrust misrepresented the nature of XRamp's trusted root certificate. XRamp admits that starting in December 2003, it obtained rights to have GlobalSign sign XRamp's root certificates. Thus, the question of whether GeoTrust accurately described XRamp's root certificate may turn on the terms of XRamp's contract with GlobalSign.

To the extent that this information is "confidential" as XRamp alleges in its response to Interrogatory no. 6, as stated above, GeoTrust will enter into a reasonable confidentiality agreement.

Please produce the requested information immediately.

E.     *Email*

Document Request No. 1 sought "All Documents related to GeoTrust, including, but not limited to, correspondence, internal memoranda, email, notes and contracts." That request sought, among other things, email that XRamp sent to customers requesting that the customers 'renew' their SSL certificates, as is alleged in GeoTrust's counterclaim. Some of those email messages have been produced *by GeoTrust* in this

case. Yet, although XRamp admits in its interrogatory answers to having sent "between 100 and 500 such messages," it has not produced any of those messages.

You have told me that XRamp has no such records because it used a computer program to generate those emails and did not keep a copy of them. I would invite you to read the transcript of Mr. Harris' sworn testimony attached to the motion to amend filed in the Verisign Litigation in which he testified to the contrary. (See pp. 215-216). It would appear that your information might not be correct.

* * *

I will call you next Monday, March 6, to discuss these issues. If we do not resolve these matters, I will immediately file a motion to compel.

Very truly yours,

Daniel P. Tighe

DPT:jv
cc:    Carolyn Oldenburg, Esquire

# GRIESINGER, TIGHE & MAFFEI, LLP

Attorneys at Law
176 Federal Street
Boston, Massachusetts 02110

TELEPHONE (617) 542-9900
FACSIMILE (617) 542-0900

Daniel P. Tighe
(617) 603-0918
dtighe@gtmllp.com

March 9, 2006

**Via Facsimile and First Class Mail**

John W. Brister, Esquire
Brister & Zandrow, L.L.P.
Counselors at Law
268 Summer Street
Boston, MA  02210-1108

      Re:     <u>Xramp v. GeoTrust,  C.A.No. 11374-RCL</u>

Dear Jack:

      Pursuant to Local Rule 37.1, I am writing to summarize our discussion about discovery this afternoon:

      1.     With respect to Verisign, you told me that Mr. Harris "will" copy some, but not all, of the relevant documents related to that litigation.  You will not commit to a time by which the information will be produced.  During the call, you mentioned litigation in California.  If XRamp was involved in litigation with Verisign in California, I expect that information as well.

      2.     You told me that Mr. Harris is removing from the production his handwritten notes.  I told you that this was improper.  You contend that these documents are privileged and or confidential, but you said that you will not produce a privilege log.  I told you that if you take the position that a document is privileged, you (not Mr. Harris) must review the document and provide a privilege log (see Local Rule 34.1(E)).

      3.     You refuse to produce the Verisign settlement agreement, related correspondence and even a judicial decree that incorporates that agreement.  You contend that that information is "confidential" and told me that you would not produce it in the absence of a court order.

      4.     You refuse to produce XRamp's agreement with GlobalSign because you say that information is confidential.  I told you that I would entertain a confidentiality

agreement and that you could (at least for now) redact any financial information. You told me that you would not produce that documents without a court order.

5.    You will send to me today XRamp's profit & loss statements for 2003 through 2005. You have told me that these documents are "all that they have," although you told me that you do not know whether such information exists for 2001 and 2002 (which was requested in GeoTrust's document requests). I told you that our request called for the production of more than profit & loss statements, including audited financial statements, balance sheets, and any other document in which XRamp stated its financial condition from 2001 through 2005. You said that as far as you know "you were producing whatever XRamp has" and you said that I could ask about it at a deposition.

6.    You still do not have, and you will not agree to produce, whatever documents XRamp relied on to calculate the damages information that you produced with your initial disclosures.

I told you that I will seek a Court Order and costs.

Please let me know if I have misunderstood your position on these matters.

Very truly yours,

Daniel P. Tighe

DPT:jv
cc:    Carolyn Oldenburg, Esquire

# GRIESINGER, TIGHE & MAFFEI, LLP

Attorneys at Law
176 Federal Street
Boston, Massachusetts 02110

TELEPHONE (617) 542-9900
FACSIMILE (617) 542-0900

Daniel P. Tighe
(617) 603-0918
dtighe@gtmllp.com

March 13, 2006

**Via Facsimile**

John W. Brister, Esquire
Brister & Zandrow, L.L.P.
Counselors at Law
268 Summer Street
Boston, MA  02210-1108

Re:    Xramp v. GeoTrust,  C.A.No. 11374-RCL

Dear Jack:

Have you received from your client the documents related to the Verisign/XRamp litigation that you mentioned on Thursday?  As you know, we agreed that you would provide copies of those documents as soon as possible.

Very truly yours,

Daniel P. Tighe

DPT/cal

cc:    Carolyn Oldenburg, Esquire

# EXHIBIT H

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| XRAMP TECHNOLOGIES, INC. and<br>XRAMP SECURITY SERVICES, INC.,<br>　　　　　　　　　Plaintiffs,<br><br>v.<br><br>GEOTRUST, INC. and<br>CHRISTOPHER BAILEY,<br>　　　　　　　　　Defendants.<br>───────────────────────<br>GEOTRUST, INC.,<br>　　　　　　　Counterclaim Plaintiff,<br><br>v.<br><br>XRAMP TECHNOLOGIES, INC. and<br>XRAMP SECURITY SERVICES, INC.,<br>　　　　　Counterclaim Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>Civil Action No. 05-11374-RCL |

## XRAMP TECHNOLOGIES, INC. AND XRAMP SECURITY SERVICES, INC.'S RESPONSE TO GEOTRUST'S FIRST REQUEST FOR THE PRODUCTION OF DOCUMENTS

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, the plaintiffs and counterclaim defendants, XRamp Technologies, Inc. and XRamp Security Services, Inc. ("XRamp") hereby respond to the First Request for the Production of Documents of the defendants and counterclaim plaintiffs, GeoTrust, Inc. and Christopher Bailey ("GeoTrust").

### DEFINITIONS AND GENERAL INSTRUCTIONS

For the purposes of this response, XRamp adopts and incorporate herein by reference the "Uniform Definitions in Discovery Request" contained in Rule 26.5 of the Local Rules of the

United States District Court for the District of Massachusetts, as incorporated as well in

GeoTrust's requests.  In addition, the following terms shall have the meanings set forth below, as

also set forth in GeoTrust's requests:

    1.  "GeoTrust" means GeoTrust, Inc., Christopher Bailey and GeoTrust, Inc.'s current and

former employees, agents, representative, attorneys, subsidiaries and affiliates.

    2.  "XRamp" or "you" means XRamp Technologies, Inc. and XRamp Security Services,

Inc. and their current and former employees agents, representatives, attorneys, subsidiaries and

affiliates and any other persons or entities through which XRamp Technologies, Inc. and XRamp

Security Services, Inc. have conducted business.

    3.  The "Complaint" means the Complaint filed by XRamp in this action on or about June

29, 2005.

    4.  The "Counterclaim Answer" means the Answer and Affirmative Defenses of  XRamp

Technologies, Inc. and XRamp Security Services, Inc. to the Counterclaim of GeoTrust, Inc. filed

on or about September 15, 2005.

    5. "Communication" means any oral, written or electronic transmittal, disclosure, or

exchange of information or request for information made from one person to another person,

whether made in person, electronically, by telephone or by any others means, and includes any

document made to record a communication, fact, idea, statement, inquiry, opinion , belief, or

otherwise.

    6.  "Person" means: (a) any natural person; or (b) any entity, including but not limited to,

any corporation, partnership, joint venture, firm, proprietorship, cooperative, trust, board,

authority, commission, association, institute, club, group, society, or any governmental or public

agency, department, bureau, or political subdivision.

7. "Document" means the original (or identical duplicate when the original is not available) of all tangible and intangible objects from which information may be derived or discerned, and specifically includes all forms of Electronic Data and other information stored on Electronic Media, as well as any non-identical document or draft bearing any mark, notation, initial, stamped indicia, comment, or character not part of the original text, which shall be considered a separate document.

8. "Electronic Data" means the original and non-identical copies of writings or items stored on Electronic Medial and/or writings or items inscribed by mechanical, facsimile, electronic, magnetic, digital, or other similar means, as well as the file, folder tabs, containers, and labels appended to or relating to any physical storage device associated with each original and/ or copy.

9. "Electronic Media" means any magnetic, optical, or other storage media device used to record Electronic Data, either on a computer or a data network (i.e., any hardware, software, or wireless combination that connects two or more computers together and which allows the computers to share or transfer data between them).

10. "Person" means: (a) any natural person; or (b) any entity, including but not limited to, any corporation, partnership, joint venture, firm, proprietorship, cooperative, trust, board, authority, commission, association, institute, club, group, society, or any governmental or public agency, department, bureau, or political subdivision.

11. "Relating to" or "related to" means concerning, referring to, alluding to, responding to, in connection with, commenting on, in response to, about, regarding, announcing, explaining,

-3-

discussing, showing, describing, studying, reflecting, analyzing, or constituting.

12.  Unless otherwise stated herein, each and every request set forth in the numbered paragraphs below seeks all responsive Documents in the possession, control, or custody of XRamp including its attorneys, officers, directors, employees, agents, parents, subsidiaries, and affiliates, as well as in the possession of any attorneys, officers, directors, employees, and/or agents of any such parents, subsidiaries, and affiliates.

13.  In the event that any Documents responsive to the Requests for Documents set forth in the numbered paragraphs below were, but no longer are, within the possession, control or custody of XRamp, state the circumstances and timing of the loss of possession, control, or custody, and the name of the person or entity to which possession was transferred, if any.

14.  Each Request for Documents is a request for the original (or copy when the original is not available) of the final version of such Documents, as well as any non-identical prior drafts or non-identical copies of such documents, including those that are non-identical by reason of notations or markings on the copies.

15.  Where information responsive to the requests below is Electronic Data or is stored on Electronic Media, GeoTrust seeks access to the electronic copies of responsive information (together with instructions and programs necessary to search or retrieve such data), including all attachments and enclosures to any responsive information, which shall not be separated from the items to which they are attached or enclosed.

16.  If you claim that any Documents are privileged or otherwise protected from discovery, then for all such Documents, please provide the following information:

      a) The nature of the Document (i.e., letter, memorandum, etc.) and the general

subject matter;

b) The date of the creation or transmittal of the Document;

c) The name and title of the author of the Document:

d) The name, title, and address of those persons or entities to whom the Document was sent and those who at any time possessed the Document;

e) A full explanation of the privilege or exclusion claimed and the factual and legal basis of that claim, including a description of the material contained in the Document which you claim to be privileged or excluded; and

f) Where the Document is presently located.

17.   All use of language in these requests which appears in the conjunctive form specifically includes the disjunctive form, and vice versa.  Similarly, all words which are used in their singular form include the plural form, and vice versa.

18.   If no Documents exist which are responsive to a particular request, please state that no responsive Documents exist.

19.   These requests are continuing and require the service of a supplemental response and the timely production of additional Documents and things pursuant to Federal Rule of Civil Procedure 26(e) in the event XRamp obtains, discovers, or locates supplemental responsive "Documents.

20.   The Documents requested shall be produced or reproduced either as they are kept in the usual course of business (i.e., a document that is part of a file, docket, or other grouping should be physically produced together with all other documents from said file, document, or other grouping responsive to a request) or shall be organized to correspond with the categories in this Request in accordance with Federal Rule of Civil Procedure 34(b).

## REQUESTS FOR DOCUMENTS

1.   All Documents related to GeoTrust, including, but not limited to, correspondence, internal memoranda, email, notes and contracts.

Response: Email correspondence between XRamp and sslreview.com and whichssl.org (GeoTrust) is produced.

2. All Documents related to the XRamp's relationship with VeriSign, N.V. or any company affiliates with VeriSign N.V., including contracts, correspondence, notes, email and internal memoranda related to VeriSign.

Response: XRamp has no such documents.

3. All Documents that support the contention that statements made by GeoTrust are false, misleading, deceptive or the cause of customer confusion.

Response: Emails from confused customers are produced. Copies of the misleading statements on the web sites have been produced by both parties in their Initial Disclosures.

4. All financial statements, including balance sheets, statements or operations, profit and loss statements of cash flows for XRamp Technologies, Inc. for all periods between 2001 and 2005 inclusive.

Response: These documents are being compiled by XRamp's accountant and will be produced.

5. All financial statements, including balance sheets, statements of operations, profit and loss statements and statements of cash flows for XRamp Security Services, Inc. for all periods between 2001 and 2005, inclusive.

Response: These documents are being compiled by XRamp's accountant and will be produced.

6. All consolidated financial statements, including balance sheets, statements of operations, profit and loss statements and statements of cash flows for XRamp for all periods

between 2001 and 2005, inclusive.

Response: These documents are being compiled by XRamp's accountant and will be produced.

7. All documents related to email sent by or on behalf of GeoTrust to persons or entities believed to be GeoTrust customers between 2001 and 2005, inclusive, including printouts of the email messages and any responses.

Response: XRamp has no such documents.

8. All documents related to any and all claims that XRamp confused or misled consumers by its use of the word "renew" in email soliciting business or otherwise, including Documents related to any litigation matter in which such claims were made.

Response: Produced is a Declaration in Support of a Motion for Leave to file Second Amended Complaint with exhibits filed in Verisign, Inc., et al v. XRrampTechnologies, Inc. and Scott Harris, U.S. District for the Western District of Texas, San Antonio Division, docket #SA-03-CV-1131. Additional pleadings filed in this action are stored in several boxes at XRamp's offices in San Antonio and will be made available for inspection and copying. Since these pleadings were electronically filed in the U.S. District Court, they should also be accessible directly from the Court.

9. All documents related to any statements on XRamp's website about what XRamp means when it uses the word "renew," including the text of any such statements.

Response: XRamp has no documents responsive to this request other than copies or duplicates of the documents produced by GeoTrust in its Initial Disclosure.

10. All documents related to any claim that XRamp was damaged by the conduct of

GeoTrust.

Response: XRamp has produced a letter proposing settlement of the claim against GeoTrust setting forth damages and supported by a graph showing a decline of sales at a time corresponding to the misleading web site.  XRamp will produce copies of its financial statements.  In addition, XRamp will produce a report of its expert on damages pursuant to this Court's scheduling order.

11.  All documents that evidence any customer confusion caused by and statements by GeoTrust.

Response: See Response to Request #3.

12.  Any Communications with third parties, including Comodo Group Inc. or any persons or entities employed by or affiliated with Comodo Group Inc., related to the subject matter set forth in the Complaint or the Counterclaim Answer, any claim asserted by XRamp against GeoTrust (in any jurisdiction) or any other actual or contemplated litigation.

Response: XRamp has no documents responsive to this request other than documents prepared in anticipation of litigation.

Respectfully submitted,

John W. Brister, BBO #057420
Leonard F. Zandrow, BBO #539030
BRISTER & ZANDROW, L.L.P.
268 Summer Street
Boston, Massachusetts 02210-1108
(617) 292-4900

Date: February 22, 2006

# EXHIBIT I

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| XRAMP TECHNOLOGIES, INC. and<br>XRAMP SECURITY SERVICES, INC.,<br>        Plaintiffs,<br><br>v.<br><br>GEOTRUST, INC. and<br>CHRISTOPHER BAILEY,<br>        Defendants.<br><br>GEOTRUST, INC.,<br>        Counterclaim Plaintiff,<br><br>v.<br><br>XRAMP TECHNOLOGIES, INC. and<br>XRAMP SECURITY SERVICES, INC.,<br>        Counterclaim Defendants. | Civil Action No. 05-11374-RCL |

## XRAMP TECHNOLOGIES, INC. AND XRAMP SECURITY SERVICES, INC.'S ANSWERS TO GEOTRUST'S FIRST SET OF INTERROGATORIES

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, the plaintiffs and counterclaim defendants, XRamp Technologies, Inc. and XRamp Security Services, Inc. ("XRamp") hereby answer the First Set of Interrogatories of the defendants and counterclaim plaintiffs, GeoTrust, Inc. and Christopher Bailey ("GeoTrust").

## DEFINITIONS AND GENERAL INSTRUCTIONS

For the purposes of these answers, XRamp adopts and incorporates herein by reference the "Uniform Definitions in Discovery Request" contained in Rule 26.5 of the Local Rules of the United States District Court for the District of Massachusetts, as incorporated as well in

-1-

GeoTrust's requests. In addition, the following terms shall have the meanings set forth below, as also set forth in GeoTrust's requests:

1. "GeoTrust" means GeoTrust, Inc., Christopher Bailey and GeoTrust, Inc.'s current and former employees, agents, representative, attorneys, subsidiaries and affiliates.

2. "XRamp" or "you" means XRamp Technologies, Inc. and XRamp Security Services, Inc. and their current and former employees agents, representatives, attorneys, subsidiaries and affiliates and any other persons or entities through which XRamp Technologies, Inc. and XRamp Security Services, Inc. have conducted business.

3. The "Complaint" means the Complaint filed by XRamp in this action on or about June 29, 2005.

4. The "Counterclaim Answer" means the Answer and Affirmative Defenses of XRamp Technologies, Inc. and XRamp Security Services, Inc. to the Counterclaim of GeoTrust, Inc. filed on or about September 15, 2005.

5. "Communication" means any oral, written or electronic transmittal, disclosure, or exchange of information or request for information made from one person to another person, whether made in person, electronically, by telephone or by any others means, and includes any document made to record a communication, fact, idea, statement, inquiry, opinion, belief, or otherwise.

6. "Person" means: (a) any natural person; or (b) any entity, including but not limited to, any corporation, partnership, joint venture, firm, proprietorship, cooperative, trust, board, authority, commission, association, institute, club, group, society, or any governmental or public agency, department, bureau, or political subdivision.

7. "Relating to" or "related to" means concerning, referring to, alluding to, responding to, in connection with, commenting on, in response to, about, regarding, announcing, explaining, discussing, showing, describing, studying, reflecting, analyzing, or constituting.

## INTERROGATORIES

### QUESTION

1. For each statement that XRamp contends: (a) was made by GeoTrust; (b) was "erroneous," "false," "disparaging," "unfair" or "misleading" and/or (c) in any way supports any of the claims asserted by XRamp in this case, please:

  a. Identify the statement in as much detail as possible;

  b. State the date or dates when the statement was made;

  c. Identify the media through which the statement was made (i.e., on a particular website address or otherwise);

  d. Identify all facts, documents or other information that support your contention that the statement was erroneous, false, disparaging, unfair, misleading or otherwise support the claims set forth in the Complaint;

  e. Identify any customer, potential customer or other third party that you contend was confused, deceived and/or misled by the statement; and

  f. Explain the basis of your knowledge that any third party identified in response to section (f) above was affected by the statement.

### ANSWER

1.a. 1. "Don't be fooled by rebranded and often overpriced certificates from resellers."

2. "Real Examples of Overpriced SSL Certificates" (listing XRamp)

3. The claim that SSLreview was written based on a number of contributions from numerous active participants in the industry, including industry experts that were involved with Equifax, GeoTrust, Verisign, FreeSSL, and Comodo.

4. "SSLreview gains revenue from advertising opportunities from CAs and companies within the SSL and hosting industry.

5. GeoTrust went to great lengths to make the site appear as a "consumer reports" type independent web site, and disguised the fact that it was running it by using the home address of an employee and using a non-business related email address.

6. The claim that XRamp was "Unstable."

7. The implied claim that XRamp was not "technically stable", "business stable", and/or "financially stable".

8. The claim that XRamp did not own its own root.

9. The claim that XRamp "does NOT have a trusted root certificate"

10. The claim that XRamp is "NOT WebTrust compliant"

11. The claim that XRamp's issuance speed is "2 working days"

12. The claim that XRamp's validation process was "Manual"

13. The claim that XRamp is a "Temporary-Pseudo CA"

14. The claim that XRamp Certificates are only suitable for "SMB" and not for Enterprise customers.

15. The implied claim that XRamp is not acceptable for commercial sites.

1.b.  The claims listed that referred to being an "Overpriced Reseller" were on the website from approximately August 2003 until approximately the end of February 2004.  The remainder of the claims listed were on the website from approximately the end of February until the website was shut down at the end of July, 2004.

1.c.  www.sslreview.com;   www.whichssl.org  Also on various search engines including Google, Yahoo, and MSN.

1.d.  None other than the content of the web site.

1.e.  See emails from confused customers produced in response to request for production.

1.f.  Customers told Scott Harris, and the company experienced a drop in sales.

## QUESTION

2.  For each month from January 2002 through December 2005, inclusive, please state the following:

    a.  XRamp Technologies, Inc.'s total revenues;

    b.  XRamp Technologies, Inc.'s revenues broken down by product line;

    c.  XRamp Technologies, Inc.'s profit margin;

    d.  XRamp Technologies, Inc.'s profit margin broken down by product line.

## ANSWER

2.a.  This information will be provided in the financial statements to be produced in XRamp's response to the Request for Production.

2.b  XRamp has no records to enable it to answer this interrogatory.

2.c  This information will be provided in the financial statements to be produced in XRamp's response to the Request for Production..

2.d. See 2.b. and 2.c.

## QUESTION

3. For each month from January 2002 through December 2005, inclusive, please state the following:

    a. XRamp Security Service, Inc.'s total revenues;

    b. XRamp Security Service, Inc.'s revenues broken down by product line;

    c. XRamp Security Service, Inc.'s profit margin;

    d. XRamp Security Service, Inc.'s profit margin broken down by product line.

## ANSWER

3.a. This information will be provided in the financial statements to be produced.

3.b. XRAMP has no records to enable it to answer this interrogatory.

3.c. To date, there have been no profits.

3.d. See 3.b. and 3.c.

## QUESTION

4. Please provide a full and complete breakdown of any and all damages you claim to have suffered as a result of the allegations contained in the Complaint.

## ANSWER

4. XRamp has retained an expert to analyze its records and other information to prepare an opinion of damages. This opinion will be produced in accordance with the scheduling order issued in this case.

## QUESTION

-6-

5. Please state when, if at all, XRamp acquired and/or developed its own "trusted root certificate."

### ANSWER

4. XRamp Security Services, Inc. owns two trusted root certificates. One was created in December 2003 (signed by GlobalSign) and the other was created September 2005 (self-signed).

### QUESTION

6. Please state whether Xramp has a contractual or other relationship with GlobalSign, N.V. ("Global Sign") pursuant to which Xramp pays or has paid royalties, license or other fees to GlobalSign, and if so, please state what services GlobalSign provides to Xramp, the terms of the arrangement and when the arrangement is due to expire.

### ANSWER

6. XRamp has a contract with GlobalSign pursuant to which GlobalSign signs XRamp root certificates. The terms of this arrangement are confidential.

### QUESTION

7. Please state whether Xramp has ever included the following statement on its website, and if so: (a) state the dates that the statement appeared on Xramp's website; and (b) identify the "web server software" that is referenced in the statement:

> We may occasionally use the term 'renew' when detailing the process that you must go through with your web server software to purchase a new SSL certificate from Xramp. This is because some web server software requires you to select the 'Renew your Existing Certificate' option in order to leave your existing SSL certificate in place and create a CSR that can be used to purchase your new certificate from Xramp SSL.

### ANSWER

-7-

7. Yes
(a) May 2003 to September 2005.
(b) Microsoft IIS (Internet Information Server)

## QUESTION

8. Please identify the individuals responsible for sending email messages to owners of GeoTrust SSL certificates between January 2002 and the present encouraging recipients to 'renew' their SSL certificates with Xramp.

## ANSWER

8. Scott Harris.

## QUESTION

9. Please state how many email messages Xramp sent between January 2002 and the present to then-owners of GeoTrust SSL certificates encouraging them to 'renew' their SSL certificates; and identify the date the message was sent and the sender and the recipient of each such email message.

## ANSWER

9. Email messages using the work "renew" were sent between April 2003 and June 2003. We have no records of the number, but our best estimate is that between 100 and 500 messages were sent.

## QUESTION

10. Please identify all other litigation matters to which Xramp has been a party since 2001 which involved allegations about the accuracy of statements made to consumers about SSL certificates and for each such matter, please identify: (a) the parties to the case; (b) the jurisdiction

in which the case was filed; (c) the docket number of the case; (d) the current status of the case and (e) if the case was settled, the terms of the settlement.

## ANSWER

10.a. through 10.c.  Verisign, Inc, Thawte Consulting (PTY) LTD, and Thawte Technologies, Inc v. XRamp Technologies, Inc. and Scott Harris, U.S. District Court for the Western District of Texas San Antonio Division, Docket #SA-03-CV-1131.

10.d.  Dismissed.

10.e.  Verisign agreed to a dismissal of the case.  XRamp agreed not to use the word "renew" in its marketing.

## QUESTION

11.  Identify each person whom you expect to call as a witness at trial.  For each such witness, state the subject matter(s) and substance of the facts to which each witness is expected to testify.

## ANSWER

11.  Scott Harris will testify as the founder and President of XRamp.  In general, he will testify regarding the history of his company and the effect the misleading information published by GeoTrust had on its growth.

Tom Wachsmuth, CPA, Xramp's accountant, will testify regarding the financial condition of the company.

## QUESTION

12.  Identify each person whom you expect to call as an expert witness at trial.  For each such expert witness state:

-9-

a. Their qualifications, education and professional experience;
b. The subject matters(s) on which each expert is expected to testify; and
c. The substance of the facts and opinions to which each expert identified above is expected to testify together with a summary of the grounds for each such opinion.

## ANSWER

12. This information will be provided upon the production of the expert's opinion in accordance with the scheduling order issued in this case.

## QUESTION

13. Please identify all persons who assisted you in preparing answers to these interrogatories.

## ANSWER

13. Attorney John W. Brister; Tom Wachsmuth.

Signed this 21" day of February, 2006.

Scott Harris
XRamp Technologies, Inc.
9086 Vista Verde Bldg. 2
San Antonio, TX 78255

-10-

# EXHIBIT J

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| VERISIGN, INC., THAWTE CONSULTING (PTY) LTD, and THAWTE TECHNOLOGIES, INC. | § § § § | |
| Plaintiffs, | § § | NO.    SA-03-CV-1131 |
| v. | § § § | |
| XRAMP TECHNOLOGIES, INC., XRAMP SECURITY SERVICES, INC., and SCOTT HARRIS, | § § § § | |
| Defendants. | § | |

## [PROPOSED] SECOND AMENDED COMPLAINT

David H. Harper
State Bar No. 09025540

HAYNES AND BOONE, LLP
901 Main Street, Suite 3100
Dallas, Texas 75202
Telephone:    (214) 651-5000
Facsimile:    (214) 651-5940

Lamont A. Jefferson
State Bar No. 10607800
Charles W. Shipman
State Bar No. 00794628

HAYNES AND BOONE, LLP
112 East Pecan Street, Suite 1600
San Antonio, Texas 78205
Telephone:    (210) 978-7000
Facsimile:    (210) 978-7450

Suzanne V. Wilson
Victoria C. Shapiro
Admitted *Pro Hac Vice*

ARNOLD & PORTER
1900 Avenue of the Stars, 17th Floor
Los Angeles, California 90067
Telephone:    (310) 552-2500
Facsimile:    (310) 552-1191

ATTORNEYS FOR PLAINTIFFS VERISIGN, INC.,
THAWTE CONSULTING (PTY) LTD, AND
THAWTE TECHNOLOGIES, INC.

This is an action by plaintiffs VeriSign, Inc., Thawte Consulting (Pty) Ltd, and Thawte Technologies, Inc. (collectively, "Plaintiffs") for damages, equitable and injunctive relief, attorneys' fees and costs for defendants' pattern of unfair and deceptive advertising and trade practices, willful infringement of Plaintiffs' intellectual property rights, and intentional interference with Plaintiffs' prospective economic advantage. Plaintiffs, for their complaint herein, founded upon federal question, diversity and supplemental jurisdiction, allege as follows:

## JURISDICTION AND VENUE

1.    This Court has jurisdiction over this action pursuant to: (i) 28 U.S.C. § 1338(b), as an action for violation of the Lanham Act, 15 U.S.C. §§ 1051 et seq.; (ii) 28 U.S.C. § 1332(a)(1), as an action between citizens of different states in which the amount in controversy exceeds $75,000, exclusive of interest and costs; and (iii) 28 U.S.C. § 1367(a), pursuant to the principles of supplemental jurisdiction.

2.    Plaintiffs are informed and believe and thereupon allege that venue is proper in this district pursuant to 28 U.S.C. §§ 1381(b)(1), and 1391(b)(2) in that, among other things, the defendants reside in this judicial district and a substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district.

## THE PARTIES

3.    Plaintiff VeriSign, Inc. ("VeriSign") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located in Mountain View, California.

4.    Plaintiff Thawte Consulting (Pty) LTD ("Thawte Consulting") is a corporation organized and existing under the laws of South Africa with its principal place of business

located in Cape Town, South Africa. Thawte Consulting is a wholly-owned subsidiary of VeriSign.

5.      Plaintiff Thawte Technologies, Inc. ("Thawte Technologies" and, together with Thawte Consulting, "Thawte") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located in Mountain View, California. Thawte Technologies is a wholly-owned subsidiary of VeriSign.

6.      Upon information and belief, defendant XRamp Technologies, Inc. ("XRamp Tech") is a corporation organized and existing under the laws of the State of Texas, with its principal place of business in San Antonio, Texas.

7.      Upon information and belief, defendant XRamp Security Services, Inc. ("XRamp Security") is a corporation organized and existing under the laws of the State of Texas, with its principal place of business in San Antonio, Texas.

8.      Upon information and belief, defendant Scott Harris ("Harris") is an individual who resides in San Antonio, Texas and is a citizen of the State of Texas.

9.      Plaintiffs are informed and believe that XRamp Tech, directly and in concert with entities and persons it controls, or under common control with or affiliated with it (including co-defendants XRamp Security and Harris), has established an Internet business to compete with VeriSign and Thawte which is built entirely upon VeriSign and Thawte's well-known and distinctive trademarks. Rather than incurring the expense and taking the time to build a brand identity of their own, defendants are simply trading off of the goodwill Plaintiffs have built up in their marks by, among other things, targeting of VeriSign's and Thawte's customers with advertising that falsely offers to "renew" these customers' existing VeriSign or Thawte digital certificate. Defendants' conduct has resulted in actual confusion among

- 2 -

VeriSign's and Thawte's customers and has damaged, and continues to threaten to damage, Plaintiffs.

10.    Plaintiffs are further informed and believe, and thereupon allege, that since September 1, 2003, XRamp Tech has intentionally sent unsolicited electronic mail messages ("e-mail") that advertise, promote or otherwise market XRamp Tech and XRamp Security (collectively referred to as "XRamp") digital certificates to, among others, Plaintiffs' customers, without the consent of these recipients. Plaintiffs are also informed and believe, and thereupon allege, that XRamp had no prior established business, commercial or trade relationship with the recipients of these e-mails. The subject line of these e-mails contained false, deceptive or misleading information, including, among other things, false, deceptive or misleading information regarding Plaintiffs' or XRamp's digital certificate products and services and false, deceptive or misleading information regarding the origin, source, or affiliation of XRamp and/or their digital certificate products and services.

11.    Plaintiffs are further informed and believe, and thereupon allege, that XRamp Tech had registered the domain names, and established websites found at, www.xramp.com, www.xrampssl.com, www.verisignssl.com, www.thawtessl.com, www.verisign-renew.com, www.thawte-renew.com, www.verisign-certificates.com, and www.thought-server-certificate.com, all of which have made or make unauthorized uses of Plaintiffs' well-known and distinctive trademarks and engage in false and misleading advertising regarding XRamp's products and services. XRamp Tech has engaged in this conduct so that individuals using the Internet will be misdirected to defendants' Internet websites, when in fact those users were attempting to connect to websites operated or sponsored by, or affiliated with, Plaintiffs.

Plaintiffs are further informed and believe, and thereupon allege, that Harris has aided and abetted or conspired with XRamp Tech to commit the acts alleged herein.

12.     Plaintiffs are informed and believe, and thereupon allege, that Harris has acted directly or conspired with the XRamp defendants to commit the wrongful acts alleged herein. In addition, Plaintiffs are informed and believe, and thereupon allege, that Harris is an owner, member and/or officer of XRamp, and receives direct economic benefits from the activities of XRamp. Further, upon information and belief, Harris directs and supervises the relevant business activity and affairs of XRamp, and has actively participated in and controlled the activity of XRamp as alleged herein.

13.     Upon information and belief, as relevant herein, each defendant was the agent of one or more of the other defendants and, in doing the things alleged herein, each defendant was acting within the course and scope of his or its agency and was subject to and under the supervision of one or more of the other defendants.

14.     Defendants, and each of them, are infringing Plaintiffs' trademarks, engaging in false and misleading advertising, and, in other respects, benefiting unfairly from Plaintiffs' substantial investment in their trademarks, which investment is responsible for the tremendous recognition that Plaintiffs' marks enjoy with consumers. This action seeks redress for the infringement of Plaintiffs' trademarks and defendants' acts of false and misleading advertising, "cybersquatting," and unfair competition.

## FACTS GIVING RISE TO THIS ACTION

A.     Introductory Background

15.     VeriSign offers, among other products and services, a range of technology and services aimed at increasing consumer confidence in the security and reliability of Internet

- 4 -

transactions. VeriSign has pioneered, and is the leading provider of, trust services for electronic commerce and communication, specializing in solutions for secure business transactions over the Internet.

16.    The Thawte plaintiffs are wholly-owned subsidiaries of VeriSign and they also offer security solutions to their customers for communicating and conducting business online.

17.    The security solutions offered by Plaintiffs include, among other things, secure sockets layer ("SSL") certificates, also known as "digital certificates." These digital certificates may be purchased by Internet merchants, and other online companies, that seek to offer their customers a means of secure online communications via encryption of these communications, including online purchases. In addition, Plaintiffs' digital certificates allow their customers to identify, or authenticate, themselves to Internet users. Companies that purchase a digital certificate from VeriSign or Thawte may display on their websites a "seal" which, when "clicked" on by an Internet user, will provide a real-time verification of the owner of the website.

B.    The Technology

1.    The Internet, Domain Names and Websites.

18.    The Internet is a worldwide network of computers through which businesses and individuals can communicate and exchange information. Millions of computers are linked to the Internet, and the information on the Internet can flow across political and geographical boundaries.

19.    Network computers actually "communicate" with each other (are linked) using Internet Protocol ("IP") numbers. The IP number consists of four groups of digits separated by periods such as "207.41.14.61." Because IP numbers are difficult to remember, the domain

name system was developed.  A domain name is a string of letters and/or numbers that is
assigned to a given IP number, which corresponds to and identifies a specific computer.  For
ease of human use, a corresponding system was developed which assigns alphanumeric strings
known as "domain names" to certain IP numbers, such as "verisign.com."  Because domain
names are associated with a unique IP number, each domain name must be unique, even if it
differs from another domain name by a single character.  Accordingly, each domain name can
be registered to only one individual or entity.  Domain names are chosen and created by the
prospective domain name registrant.

20.    The Internet allows many forms of communication and domain names can be
used a number of ways over the Internet.  For example, the Internet can be used for one-to-one
communication through e-mail.  Domain names can be used as an address to receive e-mail,
such as example@verisign.com.

21.    In addition, on the World Wide Web (the "Web"), which essentially is the
graphical user interface of the Internet, information can be presented on "pages" of graphics and
text (referred to as a "webpage" or, if composed of several webpages, a "website").  The Web is
used for both commercial and non-commercial communication.  Commercial enterprises may
use websites to display information about, or offer for sale, their goods or services.  Any
website on the Internet is accessible to users in the United States as well as others in the world
with access to the Internet.  Domain names are used as part of an address for a website, which is
called a Uniform Resource Locator ("URL") such as "http://www.verisign.com."

22.    Many websites are created using a software language called hypertext markup
language or "HTML."  In addition to the text and graphics of a website that are visible to an
Internet user, the HTML code for a website includes non-visible text.  The non-visible text may

contain information provided by the website designer or operator for use by Internet search engines. For example, the HTML code may include "metatags," which are a list of "index" words created by the website designer to describe the content of the website. In addition, the HTML code may include a "meta description" which is also created by the website designer and generally describes the website's content. Metatags, the meta description, the domain name, and the visible text portions of the website are all scanned and used by Internet "search engines" to determine whether a website is "relevant" to a particular Internet users' search request.

2.    Digital Certificates and Certification Authorities.

23.    As noted above, digital certificates include both encryption and authentication features. Digital certificates are issued by "trusted" third parties called "certification authorities." Certification authorities issue, revoke, renew, and provide directories of digital certificates. VeriSign and Thawte are both certification authorities.

24.    Each certification authority ("CA") must own – or "chain to" – a "root" certificate that is recognized by Internet browser software, such as Microsoft Internet Explorer or Netscape Navigator. A digital certificate that is issued by a CA having a root certificate will be recognized and trusted automatically by an Internet user's browser. Absent a recognized root certificate, the Internet user's browser will not recognize the security features of the digital certificate and will display a security warning to the Internet user that the online communication is not secure.

25.    Before issuing a digital certificate, CAs "authenticate" the individual or organization requesting the digital certificate. However, the degree of authentication required can vary among CAs. For example, VeriSign and Thawte authenticate organizations to which they issue digital certificates by requiring the organizations to submit reliable independent

- 7 -

documentation demonstrating that the organization is authorized to transact business under the

organization's name and to use the domain name at which its website is located.

26.    Commercial digital certificates generally are offered at one of two encryption

strengths: 40-bit and 128-bit.  The bit size indicates the length of the algorithm used for

encryption and hence the relative difficulty of interfering with the security of the

communication.  128-bit digital certificates also are the standard for large online merchants,

banks, health care organizations and insurance companies because such certificates are

computationally infeasible to compromise.  Indeed, 128-bit encryption is

309,485,009,821,345,068,724,781,056 times stronger than 40-bit encryption.

27.    Most CAs today offer digital certificates with 128-bit encryption when used in

connection with versions of Microsoft Internet Explorer and Netscape Navigator browser

software released after January 2000 ("New Browsers"), as well as the domestic versions of

such browsers released before January 2000.  Prior to January 2000, U.S. Department of

Commerce regulations restricted the level of encryption technology permitted in export versions

of Internet browser software ("Old Export Browsers").  Thus, Internet users located outside the

United States that still use Old Export Browsers are generally limited to 40-bit encryption.

28.    Digital certificates are issued for a set period of time and contain expiration

dates.  At the end of the term of a digital certificate, a customer may renew the digital certificate

with its existing CA, purchase a new digital certificate from another CA, or allow its digital

certificate to expire and cease use of a digital certificate.  If the customer elects to renew the

digital certificate, VeriSign and Thawte require the customer to complete the authentication

process again.

C.    VeriSign and Its Business.

1.    VeriSign Pioneered the Digital Certificate Market.

29.    VeriSign is a publicly-traded company that generates over a billion dollars in revenues annually. Since 1995, VeriSign has issued more than 410,000 digital certificates, making it the world's leading provider of digital certificates. VeriSign has earned a reputation for providing highly-trusted authentication and encryption services, upon which millions of Internet users have relied when engaging in electronic commerce transactions and online communications. In a 1999 industry study, the VERISIGN trademark was identified as the number one symbol that consumers familiar with the symbol relied upon for a sense of trust when visiting a website.

30.    VeriSign's digital certificate products include, among others, the "Secure Site" digital certificate and the "Secure Site Pro" digital certificate. VeriSign offers its Secure Site certificate for terms of one and two years. The Secure Site certificate enables 40-bit encryption with Old Export Browsers, and it enables 128-bit encryption with New Browsers.

31.    The Secure Site Pro certificate enables 128-bit encryption with both certain Old Export Browsers and New Browsers. Unlike the Secure Site certificates, the Secure Site Pro digital certificates include specialized software that allows certain browsers which were originally shipped with 40-bit or 56-bit encryption to "step up" to 128-bit encryption strength. The Secure Site Pro certificate is available for a one or two-year term. In 2002, the sale and renewal of Secure Site and Secure Site Pro certificates generated revenues of nearly $60 million for VeriSign.

32.    The Secure Site and Secure Site Pro certificates offer a number of value-added features. Among other benefits, holders of VeriSign's Secure Site and Secure Site Pro digital

certificates are entitled to display VeriSign's Secure Site Seal. The Seal was voted the number one sign of trust on the Internet by Internet users. A website displaying the Secure Site Seal indicates to its visitors that the ownership of the website has been authenticated by VeriSign and that confidential transactions conducted on that site are secured by a digital certificate issued by VeriSign. By "clicking" on the Secure Site Seal, users can instantly obtain information about the website's owner and its security, including the status of its digital certificate and its issuer. The VeriSign Secure Site Seal appears as follows:



33.    Since 1998, VeriSign has promoted and advertised the Secure Site Seal through its website and on the websites of major Internet merchants and retailers that display the Secure Site Seal. As a result, the Secure Site Seal is now associated in the minds of consumers with VeriSign's trust seal program, which is of the highest quality and reliability. This association is an important and valuable asset that has contributed substantially to the success and goodwill associated with VeriSign's digital certificates. Indeed, the Secure Site Seal Program has become the industry's leading trust seal program.

2.    The VeriSign Mark.

34.    For more than seven years, VeriSign has been promoting its digital certificate products and services under the trademark "VERISIGN" (the "VERISIGN Mark"). VeriSign holds numerous registrations in the VERISIGN Mark, internationally and in various classes. Among those registrations held by VeriSign, the United States Patent and Trademark Office ("USPTO") has issued Registration Nos. 2,302,350 and 2,559,289 for the VERISIGN Mark.

- 10 -

(True and correct copies of the print outs of said registrations from the USPTO's public database are attached hereto as Exhibit A and are incorporated herein by reference.)

35.    VeriSign is the owner of each of the registrations referred to in the preceding paragraph, by written assignment or otherwise, and these registrations are now valid, outstanding and uncancelled.

36.    VeriSign has made a substantial investment in advertising and marketing its products and services under the VeriSign Mark in the United States and abroad. VeriSign's 2002 sales and marketing expenditures exceeded $248 million. VeriSign's digital certificate products and services are promoted primarily on the www.verisign.com website and on the websites of major Internet merchants and retailers, where VeriSign's Secure Site Seal and the VERISIGN Mark often appear as "trustworthiness" symbols. VeriSign also markets its digital certificate products and services through e-mail, direct sales, trade shows and trade publications.

37.    As a result of VeriSign's extensive use and promotion of the VeriSign Mark, the extensive sales of products and services under the VeriSign Mark, and the high quality of VeriSign's digital trust services, the VERISIGN Mark has become famous and highly regarded in the market for such services, and the company enjoys a substantial amount of goodwill and value from the VeriSign Mark. The relevant customers and Internet users recognize the VERISIGN Mark and associate it with the products and services VeriSign offers.

D.    <u>Thawte and Its Business.</u>

38.    In 1996, Thawte became the first CA to offer digital certificates outside the United States. In December 1999, VeriSign acquired Thawte, which continues to offer digital certificates to companies around the world, including in the United States. Thawte is now the second largest provider of digital certificate services.

1.    Thawte's Sales of Digital Certificates.

39.    Like VeriSign, Thawte offers a two different digital certificates, one called the "Web Server Certificate," and one called the "SuperCert." Thawte offers its Web Server Certificates and SuperCerts in terms of one and two years. In 2002, Thawte's combined sales for Web Server Certificates and SuperCerts reached almost $14 million.

40.    Functionally, Thawte's Web Server Certificate and SuperCert are comparable to VeriSign's Secure Site and Secure Site Pro digital certificates, respectively. In addition, Thawte customers can display the Thawte "Authentic Site Seal" on their websites. By clicking on the Seal, visitors to a certificate holder's website can confirm the status of a Thawte-issued digital certificate and the owner of the associated domain name. The Thawte Authentic Site Seal appears as follows:



41.    Thawte has promoted and advertised its Authentic Site Seal through its website and on the websites of its customers that display the Authentic Site Seal. As a result, the Authentic Site Seal is now associated in the minds of consumers with Thawte's trust seal program, which is of the highest quality and reliability. This association is an important and valuable asset that has contributed substantially to the success and goodwill associated with Thawte's digital certificates.

2.    Thawte Trademarks.

42.    Since 1996, Thawte has been promoting its digital certificate products and services in the United States and worldwide under the trademark THAWTE (the "THAWTE Mark").

- 12 -

43.    In connection with its purchase of Thawte, VeriSign holds numerous registrations in the THAWTE Mark, internationally and in various classes. Among those registrations held by VeriSign, the USPTO has issued Registration Nos. 2,648,941 and 2,361,508 for the THAWTE mark and design mark. The THAWTE marks are used in connection with the sale of Thawte's digital certificates. (A true and correct copy of the print out of said registrations from the USPTO's public database is attached hereto as Exhibit B and is incorporated herein by reference.)

44.    VeriSign is the owner of the registrations referred to in the preceding paragraph, by written assignment or otherwise, and these registrations are now valid, outstanding and uncancelled.

45.    VeriSign and Thawte have made substantial investments in advertising and marketing Thawte's products and services under the THAWTE Mark in the United States and abroad. Thawte's 2002 sales and marketing expenditures exceeded $1.8 million. Thawte's SSL digital certificates are promoted primarily on the www.thawte.com website and on the websites of customers displaying the Thawte Authentic Site Seal. Thawte also markets its digital certificates through e-mail, direct sales, trade shows, trade publications and sponsorships.

46.    As a result of Thawte's extensive use and promotion of the THAWTE Mark, extensive sales of products and services under the THAWTE Mark, and the high quality of its digital trust services, the THAWTE Mark has become well-known in the market for such services, and Plaintiffs enjoy a substantial amount of goodwill and value from the THAWTE Mark. The relevant customers and consumers recognize the THAWTE Mark and associate it with the products and services Thawte offers.

- 13 -

E.    Establishment of XRamp's Digital Certificate Business.

47.    On information and belief, Plaintiffs allege that in early 2003, defendants launched their digital certificate business and formed XRamp Tech, which originally offered for sale digital certificates issued by Comodo Group, Ltd. ("Comodo").

48.    Plaintiffs are further informed and believe, and thereupon allege that, on or about September 26, 2003 – after this action was filed and Plaintiffs had applied for entry of a temporary restraining order – Harris caused the name of Coyote Wireless, Inc., a corporation which Harris controlled, to be changed to XRamp Security Services, Inc. Defendant Harris also caused XRamp Security to obtain an intermediate root certificate so that the company could begin issuing digital certificates. In or about January 2004, XRamp Tech began to offer for sale digital certificates issued by XRamp Security and discontinued the re-sale of digital certificates issued by Comodo.

49.    On information and belief, Plaintiffs allege that defendants formed XRamp Tech in order to carry out a comprehensive scheme to promote and sell digital certificate products and services to, among others, Plaintiffs' customers by making false and misleading statements concerning the source, quality and characteristics of digital certificate products and services offered by defendants and Plaintiffs. Indeed, defendants, and each of them, have engaged in a pattern of unfair competition intentionally designed to mislead consumers into purchasing digital certificates from XRamp. Plaintiffs are informed and believe that defendants' conduct is part of a scheme to create confusion among Internet users regarding Plaintiffs' endorsement or sponsorship of, or affiliation or association with, defendants and the XRamp digital certificates.

50.    Plaintiffs further allege that Defendants changed the name of Coyote Wireless, Inc. to XRamp Security in order to further this scheme by transferring certain assets related to

the XRamp Tech business to XRamp Security. Plaintiffs are informed and believe, and

thereupon allege, that XRamp Security, as the entity now issuing digital certificates to XRamp

Tech and its customers, has the power to control XRamp Tech's marketing actions and the

advertising claims made by XRamp Tech regarding the features and functionality of the XRamp

Security digital certificates.

       F.     <u>Defendants' False and Misleading Advertising</u>.

      51.    Defendants have made false and misleading offers to Internet users, including

Plaintiffs' customers, stating among other things that defendants could "renew" digital

certificates originally issued by Plaintiffs. These "renewal" offers were made through

defendants' websites, unsolicited e-mail advertisements sent to Plaintiffs' customers, and

Internet business directories and search engine results. For example, as of September 10, 2003,

an Internet user accessing the homepage of defendants' website at www.xrampssl.com (the

"XRampSSL Website") was presented with the following statements in bold lettering:

# Renew your existing Cert!

## Save <u>BIG</u> over Verisign and Thawte!

## Renew your Existing 128-Bit SSL Certificate with us and Save Big!

### Renewal Pricing:

Versign's [sic] Price = $249.00 (that just for 40-bit!)

Thawte's Price = $159.00 (or $399 for their SuperCert!)

### XRampSSL's Price = $89.95!

Other text on the XRampSSL Website homepage informed consumers that they could renew

their existing VeriSign or Thawte digital certificate "up to 90 days prior to your certificate

expiring. Time left on your existing certificate will simply be added to your new cert!" (A true and correct print out of the XRampSSL Website homepage dated August 29, 2003 is attached hereto as Exhibit C and is incorporated herein by reference.)

52.    In addition, toward the bottom of the XRampSSL Website homepage was a hyperlink captioned "Renew Now – Click Here!", which took the visitor to a page located at www.xrampssl.com/Products/renew.asp. As of September 10, 2003, that web page stated in large, bold text, "Renew your existing Certificate," followed by text including "XRampSSL can renew ANY certificate from ANY certificate vendor including VeriSign, Thawte, and many others."

53.    Defendants repeated their advertising on other websites that they operate. For example, until approximately October 8, 2003, the homepage of the website located at http:\\www.xramp.com (the "XRamp Website") stated, "Renew your existing server certificate issued by VeriSign [or] Thawte . . . up to 90 days in advance." (A true and correct print out of the XRamp Website homepage, dated August 29, 2003, is attached hereto as Exhibit D and is incorporated herein by reference.) By clicking on a hyperlink provided on the XRamp Website homepage, the user is directed to the XRampSSL Website.

54.    In addition, defendants XRamp Tech and Harris intentionally registered at least six Internet domain names comprised in whole or in part of Plaintiffs' trademarks or marks confusingly similar to Plaintiffs' trademarks. Until at least September 10, 2003, these defendants used these domain names to direct Internet users to their XRampSSL Website and XRamp Website in order to promote the sale of XRamp digital certificates:

| Domain Name | Registration Date | Registrant | Admin Contact |
| --- | --- | --- | --- |
| verisignssl.com | 3/22/2003 | XRamp | Scott Harris |

| | | | |
|---|---|---|---|
| verisign-renew.com | 3/22/2003 | XRamp | Scott Harris |
| thawtessl.com | 3/22/2003 | XRamp | Scott Harris |
| thawte-renew.com | 3/22/2003 | XRamp | Scott Harris |
| verisign-certificates.com | 3/22/2003 | XRamp | Scott Harris |
| thought-server-certificate.com | 3/22/2003 | XRamp | Scott Harris |

The "Administrative Contact" of a domain name is the individual authorized to interact with the domain name registrar on behalf of the domain name registrant. Thus, the Administrative Contact may, among other things, transfer a domain name registration to another person or entity.

55.    For example, as of September 10, 2003, Internet users who typed the domain names "verisignssl.com" and "thought-server-certificate.com" into their Internet browsers were redirected to the XRampSSL Website and were presented with defendants' false offer to "renew" the users' VeriSign or Thawte digital certificate. (A true and correct copy of the webpages to which the "verisignssl.com" and "thought-server-certificate.com" domain names directed Internet users, respectively, are attached hereto as Exhibit E and are incorporated herein by reference.) Similarly, Internet users who typed in the domain names "thawtessl.com" and "thawte-renew.com" were redirected to the XRamp Website and presented with an offer to "renew" their Thawte digital certificates. (True and correct printouts of webpages that the domain names "thawtessl.com" and "thawte-renew.com" redirected to, respectively, are attached hereto as Exhibit F and are incorporated herein by reference.) On information and belief, Plaintiffs allege that prior to the date of the filing of the initial Complaint in this action, Internet users who typed in the domain name "verisign-certificates.com" were redirected to the

XRampSSL or XRamp Website and were presented with defendants' false offer to "renew" digital certificate services provided by VeriSign or Thawte.

56.    Alternatively, as of September 10, 2003, if an Internet user typed in the domain name "verisign-renew.com" (the "VeriSign-Renew Website"), he or she was directed to a one-page website that included statements regarding VeriSign. This one-page website acted as a gateway page to XRamp's other commercial websites as it contained links to the XRampSSL Website and XRamp Website, both of which offered to "renew" the Internet users' VeriSign digital certificates. In addition, the meta description for the VeriSign-Renew Website, which appeared at the top of the Internet user's web browser, stated: "Renew your Veri[S]ign Certificate for less!" (A true and correct copy out of the VeriSign-Renew Website homepage dated August 29, 2003 is attached hereto as Exhibit G and is incorporated herein by reference.)

57.    Moreover, in an attempt to manipulate search engines into listing XRamp's websites when an Internet user searched for a VeriSign or Thawte website, defendants XRamp Tech and Harris embedded the VERISIGN and THAWTE trademarks in the non-visible metatags for at least two of their websites. (True and correct copies of the HTML code for the homepages of the XRampSSL Website and the VeriSignSSL Website as they existed on September 10, 2003 are attached hereto, respectively, as Exhibit H and are incorporated herein by reference.)

58.    Plaintiffs are informed and believe, and on that basis allege, that defendants XRamp Tech and Harris repeated their false and misleading offer to "renew" existing VeriSign and Thawte digital certificates in descriptions of XRamp's business provided by them, and each of them, to search engines and online business directories that included the following or similar text, "Renew your existing certificates from Veri[S]ign or Thawte up to 90 days in advance."

- 18 -

59.    Defendants also have repeated their false and misleading advertising statements in unsolicited e-mail advertisements targeted specifically, and individually, to existing VeriSign and Thawte customers and potential customers. Among other things, such e-mails included false and misleading information in the subject line of the e-mail. Moreover, on information and belief, Plaintiffs allege that defendants had no prior or established business relationship with the recipients of such e-mails in that defendants had not previously engaged in a voluntary, two-way communication with the e-mails' recipients regarding products or services offered by defendants or the recipient. On information and belief, Plaintiffs further allege that defendants identified the e-mail addresses to which they sent these e-mails by using a software program that included a "spider," which program allowed defendants to identify those websites on the Internet that are using the digital certificate services of Plaintiffs. Once identified in this manner, Plaintiffs allege that defendants transmitted false and misleading e-mail advertisements to Plaintiffs' customers.

60.    For example, the "subject line" of at least one such e-mail states, "[customer's website] SSL certificate problem," which misleadingly suggests that the e-mail relates to an actual problem with the customer's digital certificate. The body of this e-mail advertisement states, among other things: "You can renew your existing SSL certificate with XRampSSL for as low as $60 a year, far less than you are currently paying Thawte." (A true and correct copy an electronic mail message dated September 16, 2003 sent by Josh Andrews at the e-mail address Josh@XRampSSL.com to a customer of Thawte is attached hereto as Exhibit I and is incorporated herein by reference.) Defendants' false or misleading subject line compounds the confusion caused by their use of the term "renew" by misleading some VeriSign and Thawte

customers into believing that they must respond to defendants' advertisement to avoid "problems" with their digital certificates.

61.    E-mail advertisements sent by defendants to customers and potential customs of Plaintiffs prior to September 1, 2003 also contain numerous false and misleading statements. For example, the subject line of one such e-mail states, "Thawte SSL certificate renewal for [customer's website]," suggesting that the e-mail relates to the renewal of the customer's digital certificate. The body of this e-mail advertisement states, among other things:

> Hi,
>
> I was on your site and noticed that your SSL certificate for [customer's website] will expire in less than a month.
>
> I thought you may want to know that you can renew your existing VeriSign certificate with our company for hundreds of dollars off VeriSign's normal renewal price.
>
> At http://www.XRampSSL.com you can renew your certificate up to 90 days in advance and we will add all remaining days that you have left on your existing certificate so you don't have to worry about waiting until the last minute or losing out on time that you have already paid for.

(A true and correct copy of an electronic mail message dated July 8, 2003 sent by Josh Andrews at the e-mail address Josh@XRampSSL.com to a customer of VeriSign's authorized reseller Soltrus, Inc. is attached hereto as Exhibit J and is incorporated herein by reference.) Similar unsolicited e-mail advertisements have been sent by defendants to Thawte's customers. (A true and correct copy an electronic mail message dated June 9, 2003 sent by Josh Andrews at the e-mail address Josh@XRampSSL.com to a customer of Thawte is attached hereto as Exhibit K and is incorporated herein by reference.)

- 20 -

62.    Defendants' claim that they can "renew" digital certificates originally issued by VeriSign or Thawte is false and misleading.  Only VeriSign can renew digital certificate services provided by VeriSign, and only Thawte can renew digital certificate services provided by Thawte.  Similar to defendants' e-mail solicitations, VeriSign and Thawte notify their customers by e-mail prior to the expiration of a digital certificate to allow such customers to renew their digital certificate services before they expire.  As a result, Defendants' use of the term "renew" falsely implies that Defendants can provide the recipient with a Thawte or VeriSign certificate.

63.    In fact, any VeriSign or Thawte customers who accept defendants' offer to "renew" their digital certificates through XRamp actually:

    (i)    terminate their relationship with VeriSign or Thawte;

    (ii)    receive a brand new digital certificate issued from a different root certificate; and

    (iii)    must remove the VeriSign Secure Site Seal or Thawte Authentic Site Seal from their websites.

Furthermore, the customer must complete an authentication process, which is not equivalent to the high level of authentication provided by VeriSign and Thawte.

64.    Defendants' intent to confuse prospective customers into purchasing a digital certificate from XRamp rather than actually renewing their certificate services with VeriSign and Thawte is underscored by statements on the XRampSSL Website.  As of September 10, 2003 in fine print at the bottom of its homepage (which is not visible to an Internet user unless he or she scrolls all the way down the webpage), the XRampSSL Website stated:

- 21 -

> XRampSSL is not affiliated in any way with Verisign [sic] or Thawte. All Certificates
> issued will be XRampSSL Certificates. When you "renew" a certificate that was
> originally purchased from a different certificate provider, such as Verisign [sic], we will
> issue you a XRampSSL Certificate . . . .

This statement is an ineffective disclaimer because it fails to mitigate the misimpression left in the minds of consumers by large, bold text at the top of the XRampSSL Website. Moreover, this alleged disclaimer does not appear on other pages of the XRampSSL Website, the e-mail advertisement sent to VeriSign and Thawte customers, the XRamp Website, or search engine results that falsely represent defendants' digital certificate offerings.

65.    As the result of defendants' conduct, a customer who purchases an XRamp certificate may believe that he, she or it is simply renewing existing VeriSign or Thawte digital certificate services. Thus, defendants are passing off their digital certificates as certificates issued by VeriSign or Thawte.

66.    In addition, as of at least September 10, 2003 and up to and including October 8, 2003, the XRampSSL Website also contained numerous false and misleading statements regarding the qualities and features of defendants' digital certificates as compared to those offered by Plaintiffs. In fact, the digital certificates offered by defendants differ markedly from those offered by VeriSign and Thawte. Despite these differences, defendants falsely and misleadingly stated on the XRampSSL Website that "XRampSSL provides the same high-quality certificates" as VeriSign and Thawte "at a deep discount." As of September 10, 2003, the XRampSSL Website also falsely and misleadingly stated that "[t]here is not any significant difference between ANY of the certificates" offered by XRampSSL, VeriSign or Thawte.

67.     In fact, defendants' digital certificates differ from those offered by VeriSign and Thawte in significant and material ways, including without limitation the encryption strength offered by the certificates in certain situations, the warranty and insurance protection offered by the certification authority, the compatibility of the digital certificates with different Internet browsers, and authentication represented by the certificate.  Accordingly, defendants have misrepresented the qualities and feature of their digital certificates and those offered by VeriSign and Thawte.

G.      <u>Defendants' Unauthorized Use of the VeriSign and Thawte Marks.</u>

1.      <u>Defendants' Infringing Domain Names.</u>

68.     Defendants have engaged in a scheme to register and use domain names that contain Plaintiffs' famous, well-known and distinctive marks in connection with websites that compete with Plaintiffs' own websites and with the intent to trade off of Plaintiffs' goodwill in its marks.

69.     Pursuant to this illegal scheme, on or about March 22, 2003, without VeriSign's authorization or knowledge, defendants registered and began using the "verisignssl.com," "verisign-renew.com," "thawtessl.com," "thawte-renew.com," "verisign-certificates.com," and "thought-server-certificate.com" domain names (collectively, the "Infringing Domain Names"). None of these domain names or their related websites is affiliated with VeriSign or Thawte.

70.     Defendants' use of the Infringing Domain Names is diverting Internet traffic to websites promoting defendants' digital certificates and other products and services.

71.     On information and belief, Plaintiffs allege that defendants obtain revenue from the websites associated with the Infringing Domain Names.

2.    Defendants' Infringing HTML code.

72.    Defendants also have used, without Plaintiffs' consent, the VERISIGN and

THAWTE Marks in the metatags for the XRampSSL Website and other websites.

73.    Metatags are commonly scanned by Internet search engines when Internet users

conduct searches of the Internet for material that is of interest to them.  Accordingly, Internet

users who use a search engine, such as Google.com, AltaVista, or Lycos, for genuine and

official VeriSign and Thawte services and products using the search terms "VeriSign" and

"Thawte" may be misdirected to defendants' websites instead.

74.    This confusion is exacerbated by the "meta description" used by defendants for

their websites.  An Internet user who types "VeriSign" or "Thawte" into a search engine

searching for an official VeriSign website may see the following entry among those provided by

the search engine:

>XRAMP SSL
>offers secure SSL certificates, Verisign certificate renewal,
>and more.

This search engine entry is controlled by the HTML code designed by defendants for their

websites.  This description of XRamp's offerings creates the false impression that XRamp is

affiliated with, or endorsed by, VeriSign and has the authority to renew existing VeriSign digital

certificates.

3.    Defendants Willfully Infringed Plaintiffs' Marks.

75.    Defendants engaged in each instance of the foregoing infringing conduct

willfully and with the intent to trade on Plaintiffs' reputations and goodwill.  Defendants'

unlawful use of the VERISIGN and THAWTE Marks is and has been willful and intentional, as

evidenced in part by the fact that defendants registered the Infringing Domain Names having

actual knowledge of VeriSign, Thawte, the VERISIGN trademarks and the THAWTE

- 24 -

trademarks. Indeed, as of September 10, 2003, defendants' own website stated: "Throughout the Internet there are sites that display the Veri[S]ign and Thawte logos making both of these brands nearly a household name."

    H.    <u>The Confusion and Injury Caused by Defendants' Actions.</u>

        1.    <u>Defendants' False Offer to "Renew" Plaintiffs' Digital Certificates</u>

            <u>Has Caused Actual Confusion Among Plaintiffs' Customers.</u>

    76.    On information and belief, Plaintiffs allege that, on or about July 8, 2003, defendants sent an e-mail to a customer of an authorized reseller of VeriSign's digital certificates, Soltrus Inc. ("Soltrus"), stating that the customer's "existing VeriSign certificate . . . will expire in a little more than 4 weeks." The e-mail further states that the customer "can renew your existing VeriSign certificate with our company." (See Exhibit J.) The Soltrus customer targeted by the foregoing e-mail contacted Soltrus to inquire whether XRamp is an approved VeriSign reseller. Defendants' conduct resulted in confusion regarding the association between VeriSign and XRamp.

    77.    In addition, defendants have sent similar unsolicited e-mails to Thawte customers offering to "renew" their Thawte digital certificates. In fact, one customer accepted the offer from XRamp after receiving an e-mail from defendants that stated:

        "FINAL WARNING: Your Secure SSL Certificate for [your website] expires in

        2 days. . . . To renew your certificate now for as low as $60 per year, visit

        https:\\www.XRampSSL.com/Products/renew.asp."

(A true and correct copy of the e-mail sent by defendants to a Thawte customer on or about July 15, 2003 is attached hereto as Exhibit L and is incorporated herein by reference.)

78.     After accepting XRamp's offer to "renew" its Thawte digital certificate, Thawte's customer realized that he had been misled.  The customer contacted Thawte to complain:

> [W]e went ahead and renewed this with XRampSSL instead of Thawte.  [The]
>
> e-mail is a total hoax because of the fact that it wasn't actually a renewal, but a
>
> new cert from a new company.  There's not a lot we can do about it now I t
>
> ink.  If I could cancel with them and renew with Thawte and not be out $159.00
>
> I'd do it, but I doubt if I'm going to be able to do anything about it.

(A true and correct copy of the August 22, 2003 e-mail sent by a Thawte customer to Thawte is attached hereto as Exhibit M and is incorporated herein by reference.)  The August 22, 2003 e-mail evidences actual confusion among existing Thawte customers as to the affiliation between Thawte and defendants.

### 2.     Defendants' Unauthorized Use of the VeriSign and Thawte Marks Creates a Likelihood of Confusion.

79.     Defendants' pattern of unfair business practices and trademark infringement creates a likelihood of confusion among consumers and Internet users as to the source and/or affiliation of defendants and the XRamp certificates, as well as other products, with Plaintiffs.  Such users may be confused into believing that the XRampSSL and XRamp Websites are somehow endorsed, sponsored or operated by Plaintiffs.  As a result, these users may never visit the Plaintiffs' official websites or make purchases from Plaintiffs.

80.     Plaintiffs are informed and believe, and thereupon allege, that defendants registered, have used, and are using the Infringing Domain Names and the VERISIGN and THAWTE Marks in order to trade off of and benefit from the name recognition, goodwill and

reputation for trust that Plaintiffs have acquired over the last seven years. Rather than develop goodwill in their own marks, defendants have simply misappropriated Plaintiffs' hard-won reputations for quality.

81.    Plaintiffs are further informed and believe, and thereupon allege, that defendants are receiving financial gain by reason of their pattern of unfair business practices, unauthorized use of the Plaintiffs' Marks, and the Infringing Domain Names.

82.    Defendants' acts alleged herein have injured and threaten to continue to injure VeriSign and Thawte. Among other things, Plaintiffs have suffered, and are likely to continue to suffer, a loss of business, in that some existing and prospective customers will elect to purchase digital certificates from defendants based on defendants' false and misleading statements. Moreover, Plaintiffs are likely to suffer a loss of goodwill, in that some customers who are dissatisfied with products and services of defendants may wrongly believe that these products and services were received from, or were somehow associated or connected with, Plaintiffs.

3.    <u>Defendants' Unsolicited E-mail Advertisements Have Diverted Trade</u>
       <u>From Plaintiffs and Harmed Plaintiffs' Reputation and Goodwill.</u>

83.    On information and belief, Plaintiffs allege that, by including false, deceptive or misleading information in the subject lines of their e-mail advertisements, defendants have obtained and continue to obtain revenue from the recipients of such e-mails who purchase XRamp digital certificates instead of renewing or otherwise purchasing digital certificate services from Plaintiffs.

84.    Defendants' unlawful transmission of unsolicited and false, deceptive, or misleading e-mails have injured and threaten to continue to injure VeriSign and Thawte.

Among other things, Plaintiffs have suffered, and are likely to continue to suffer, a loss of business, in that some existing and prospective customers will elect to purchase digital certificates from defendants based on defendants' unsolicited and false, deceptive or misleading e-mails. Moreover, Plaintiffs are likely to suffer a loss of goodwill, in that some customers who are dissatisfied with products and services of defendants may wrongly believe that these products and services were received from, or were somehow associated or connected with, Plaintiffs.

I.    XRamp Failed to Cease Its Infringing Conduct Upon Notification by VeriSign.

85.    Upon learning of defendants' false and misleading representations regarding VeriSign's and Thawte's digital certificates and the unauthorized uses of their trademarks, Plaintiffs, through their attorney, wrote to defendants at the postal addresses identified in the online registration record for the domain name "xrampssl.com." Plaintiffs demanded that defendants immediately cease their unlawful conduct.

86.    Defendants responded to Plaintiffs' counsel's letter, but refused to cease their offending conduct. Accordingly, Plaintiffs' efforts to obtain a voluntary cessation of defendants' unfair and infringing activities have been unsuccessful. Defendants' offending conduct continued unabated, and Plaintiffs were left with no choice but to institute the instant action seeking judicial protection of their rights.

87.    After filing and serving on defendants the initial complaint in this action, defendants continued to engage in their offending conduct by, among other things, distributing a false and misleading e-mail advertisement to Plaintiffs' customers.

88.     Through subsequent telephone conversations and correspondence with defendants, Plaintiffs learned that defendants had registered and were using in commerce the domain names "verisign-certificates.com" and "thought-server-certificate.com." As alleged herein, Plaintiffs did not authorize defendants to register and/or use these domain names, which incorporate Plaintiffs' trademarks or trademarks confusingly similar to Plaintiffs' trademarks.

FIRST CLAIM FOR RELIEF

(For False Advertising and Unfair Competition, 15 U.S.C. § 1125(a))

89.     Plaintiffs specifically reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 88 hereof.

90.     The acts of defendants alleged herein misrepresent the nature, characteristics or qualities of their goods, services or commercial activities.  Further, defendants' acts are likely to cause confusion, or to cause mistake, or to deceive the public as to the affiliation, connection or association of defendants with Plaintiffs, or as to the sponsorship or approval of defendants' goods, services, or commercial activities by Plaintiffs.

91.     As alleged herein, defendants have diverted trade from Plaintiffs and their authorized resellers by fraudulently representing that the products and services sold by defendants have qualities which in fact they do not have, but which the products of Plaintiffs do have, and defendants made said representations intending that they would divert trade away from Plaintiffs and their authorized resellers.

92.     Defendants' acts of publishing false and misleading statements concerning their own products and Plaintiffs' products constitute false advertising and unfair competition affecting interstate commerce in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

- 29 -

93.    Defendants' wrongful acts have directly and proximately harmed Plaintiffs in at least the following ways:  (i) defendants' false advertising and misleading statements have harmed Plaintiffs' reputations with consumers and resellers; (ii) defendants' wrongful actions have diminished the goodwill associated with Plaintiffs and their products; and (iii) defendants' misrepresentations and other wrongful actions have caused Plaintiffs to lose sales of their own products and services.

94.    Plaintiffs have no adequate remedy at law for the foregoing wrongful conduct of defendants, in that:  (i) defendants' actions damage and threaten to continue to damage Plaintiffs' unique and valuable property, injury to which cannot adequately be compensated by monetary damages; (ii) the wrongful acts of defendants injure and threaten to continue to injure Plaintiffs' reputation and goodwill; (iii) the damages to Plaintiffs from defendants' actions are not precisely and fully ascertainable; and (iv) the damage resulting to Plaintiffs from defendants' conduct alleged herein, and the conduct itself, are continuing, and Plaintiffs would be required to bring a multiplicity of suits to achieve full compensation for the injuries caused thereby.

95.    Unless restrained, the foregoing wrongful acts of defendants will continue to cause irreparable injury to Plaintiffs, both during the pendency of this action and thereafter. Therefore, this Court should enter an order preliminarily and permanently enjoining defendants and their agents, employees and others acting in concert with them, from directly or indirectly: (i) marketing, circulating, mailing, disseminating or otherwise distributing any material that incorporates any false, misleading or deceptive statements or misrepresentations; (ii) engaging in any false advertising or unlawful or unfair competition with Plaintiffs; (iii) imitating, copying or making unauthorized use of the Plaintiffs' trademarks; (iv) manufacturing, producing,

distributing, circulating, selling, offering for sale, advertising, promoting or displaying any product or service bearing any simulation, reproduction, counterfeit, copy or colorable imitation of the Plaintiffs' trademarks; (v) using any simulation, reproduction, counterfeit, copy or colorable imitation of the Plaintiffs' trademarks in connection with the promotion, advertisement, display, sale, offering for sale, manufacture, production, circulation or distribution of any service, package or product in such fashion as falsely to relate or connect, or tend to relate or connect, such service, product or packaging in any way to Plaintiffs or to any goods or services sold, manufactured, distributed, sponsored or approved by, or connected with, Plaintiffs; (vi) engaging in any other activity constituting an infringement of any of Plaintiffs' rights in Plaintiffs' trademarks; or (vii) assisting in or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (i) through (vii) above.

96.     Plaintiffs are further entitled to recover damages sustained in consequence of defendants' conduct alleged herein, in an amount to be determined; to recover defendants' profits or gains acquired by defendants by means of their wrongful acts; and to recover their attorneys' fees and other costs herein.  Based upon the circumstances of the case, including the willful, deliberate and intentional nature of defendants' conduct, as well as the extent of the unlawful conduct, pursuant to 15 U.S.C. § 1117, Plaintiffs are further entitled to recover triple the amount found as actual damages.

<u>SECOND CLAIM FOR RELIEF</u>

(For Trademark Infringement, 15 U.S.C. § 1114(1))

97.     Plaintiffs specifically reallege and incorporate herein by reference each and every allegation contained in Paragraphs 1 through 88 hereof.

- 31 -

98.    The United States Patent and Trademark Office has granted federal trademark registrations for the VERISIGN and THAWTE trademarks identified in this complaint. Copies of such registrations are attached hereto as Exhibits A and B.

95. Defendants are liable for direct and/or contributory infringement of the VERISIGN and THAWTE trademarks. With knowledge of Plaintiffs' trademarks, defendants have used these marks to sell, offer for sale and distribute goods and services in interstate commerce.

99.    Defendants' use of the VERISIGN and THAWTE marks constitutes use in commerce, without the consent of Plaintiffs, of a reproduction, counterfeit, copy or colorable imitation of the trademarks in connection with the advertisement, promotion, sale and distribution of products and/or services, which use is likely to cause confusion or mistake, or to deceive consumers and therefore infringe Plaintiffs' rights in the VERISIGN and THAWTE marks, in violation of 15 U.S.C. § 1114(1).

100.    Plaintiffs have no adequate remedy at law for defendants' infringement of the VERISIGN and THAWTE marks, in that: (i) these registered trademarks are unique and valuable property, injury to which cannot adequately be compensated by monetary damages; (ii) the damages to Plaintiffs resulting from the infringement are not precisely and fully ascertainable; (iii) the infringement injures and threatens to continue to injure Plaintiffs' reputations and goodwill; and (iv) the damage resulting to Plaintiffs from defendants' conduct, and the conduct itself, are continuing, and Plaintiffs would be required to bring a multiplicity of suits to achieve full redress for the injuries caused thereby.

101.    Unless restrained, defendants' infringement of the VERISIGN and THAWTE marks will continue to cause irreparable injury to Plaintiffs, both during the pendency of this action and thereafter. Therefore, this Court should enter an order preliminarily and permanently

enjoining defendants and its agents, employees and others acting in concert with them, from directly or indirectly: (i) imitating, copying or making unauthorized use of the VERISIGN and/or THAWTE trademarks; (ii) manufacturing, producing, distributing, circulating, selling, offering for sale, advertising, promoting or displaying any product or service bearing any simulation, reproduction, counterfeit, copy or colorable imitation of the VERISIGN and/or THAWTE marks; (iii) using any simulation, reproduction, counterfeit, copy or colorable imitation of the VERISIGN and/or THAWTE marks in connection with the promotion, advertisement, display, sale, offering for sale, manufacture, production, circulation or distribution of any service, package or product in such fashion as falsely to relate or connect, or tend to relate or connect, such service, product or packaging in any way to Plaintiffs or to any goods or services sold, manufactured, distributed, sponsored or approved by, or connected with, Plaintiffs; (iv) engaging in any other activity constituting an infringement of any of Plaintiffs' rights in the VERISIGN and/or THAWTE marks; or (v) assisting in or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (i) through (v) above.

102.    Plaintiffs are further entitled to recover damages sustained in consequence of defendants' conduct alleged herein, in an amount to be determined; to recover defendants' profits; and to recover their attorneys' fees and other costs herein. Based upon the circumstances of the case, including the willful, deliberate and intentional nature of defendants' conduct, as well as the extent of the unlawful conduct, pursuant to 15 U.S.C. § 1117, Plaintiffs are further entitled to recover triple the amount found as actual damages.

THIRD CLAIM FOR RELIEF

(For Violation of the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)

Against Defendants XRamp Technologies, Inc. and Scott Harris)

103.   Plaintiffs specifically reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 88 hereof.

104.   VeriSign's VERISIGN and THAWTE marks are distinctive and have become widely known and respected, and Plaintiffs have developed an enormous amount of goodwill in them.

105.   Plaintiffs are informed and believe, and thereupon allege, that defendants registered the Infringing Domain Names with a bad faith intent to profit from the use of the Plaintiffs' trademarks.

106.   Defendants' choice of "verisignssl.com," "thawtessl.com," "verisign-renew.com," "thawte-renew.com," "verisign-certificates.com," and "thought-server-certificate.com" as domain names was not based in any way on defendants' legal name or any name that otherwise is commonly used to identify defendants.

107.   These Infringing Domain Names are confusingly similar to Plaintiffs' distinctive VERISIGN and THAWTE marks.

108.   Defendants have never made use of the Infringing Domain Names in connection with a bona fide offering of any goods or services sold under Plaintiffs' trademarks.

109.   Defendants have made and continue to make use in commerce of Plaintiffs' trademarks in a manner that infringes and dilutes the VERISIGN and THAWTE marks and lessens the capacity of such marks to identify and distinguish Plaintiffs' goods and services.

- 34 -

110.    The acts of defendants alleged herein are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation or connection with, or association of Plaintiffs or its websites with the websites offered by defendants, including those linked to the defendants' websites, including the goods and services offered at those websites. Defendants' actions further misrepresent the nature, characteristics or qualities of defendants' goods, services or commercial activities.

111.    Plaintiffs have no adequate remedy at law for the foregoing wrongful conduct of defendants, in that: (i) defendants' actions damage and threaten to continue to damage Plaintiffs' unique and valuable property, injury to which cannot adequately be compensated by monetary damages; (ii) the damages to Plaintiffs from defendants' wrongful conduct are not precisely and fully ascertainable; and (iii) the wrongful acts of defendants injure and threaten to continue to injure Plaintiffs' reputations and goodwill, and (iv) the damage resulting to Plaintiffs from defendants' wrongful conduct, and the conduct itself, are continuing, and Plaintiffs would be required to bring a multiplicity of suits to achieve full compensation for the injuries caused thereby.

112.    Unless restrained, the foregoing wrongful acts of defendants will continue to cause irreparable injury to Plaintiffs, both during the pendency of this action and thereafter. Therefore, this Court should enter orders preliminarily and permanently enjoining defendants and their agents, employees and others acting in concert with them from directly or indirectly making any further use of the domain names "verisignssl.com," "thawtessl.com," "verisign-renew.com" and "thawte-renew.com," "verisign-certificates.com," and "thought-server-certificate.com," or any other domain name that is confusingly similar to Plaintiffs' trademarks, including the VERISIGN and THAWTE marks, or any other trademark owned by Plaintiffs.

Plaintiffs are further entitled to an order from this Court requiring defendants to forfeit, cancel or transfer the Infringing Domain Names registrations to VeriSign, as well as any other domain names that infringe or dilute Plaintiffs' trademarks.

113.    Plaintiffs are further entitled to recover damages sustained in consequence of defendants' wrongful conduct, in an amount to be determined; to recover defendants' profits; and to recover their attorneys' fees and other costs herein.

114.    In the alternative to recovering their actual damages, Plaintiffs are entitled to recover statutory damages of up to $100,000 for each Infringing Domain Name, based on defendants' registration and use of the Infringing Domain Names after the effective date of the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d).

FOURTH CLAIM FOR RELIEF

(For Unfair Competition, California State Common Law)

115.    Plaintiffs specifically reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 114 hereof.

116.    Defendants' conduct, as alleged above, constitutes unfair competition under California's common law.  Defendants' acts have resulted in the "passing off" of defendants' products and services as those of one or more of Plaintiffs, or as somehow related or associated with, or sponsored or endorsed by, one or more of Plaintiffs.

117.    On information and belief, defendants' acts have injured and threaten to continue to injure Plaintiffs.  Moreover, defendants' conduct has caused damage and threatens to continue to cause damage to Plaintiffs by, among other things, infringing and reducing the value of Plaintiffs' trademarks.  Plaintiffs also have incurred and will continue to incur attorneys' fees and other costs in bringing the present action.

118.    Defendants' conduct has caused and will continue to cause Plaintiffs substantial injury, including dilution of its goodwill, confusion of existing and potential customers, injury to its reputation, and diminution in the value of its property. The harm that these acts will cause to Plaintiffs is both imminent and irreparable, and the amount of damage sustained by Plaintiffs will be difficult to ascertain if these acts continue. Plaintiffs have no adequate remedy at law.

119.    Plaintiffs are entitled to an order of this Court preliminarily and permanently enjoining defendants and their agents, employees and all others acting in concert with them from directly or indirectly committing such unfair and/or lawful business practices. Plaintiffs are further entitled to recovery of all damages suffered by them as a result of defendants' conduct.

120.    Plaintiffs are informed and believe and thereupon alleged that defendants' conduct was oppressive, fraudulent and malicious and that Plaintiffs are thereby entitled to an award of punitive damages.

<u>FIFTH CLAIM FOR RELIEF</u>

(For False Advertising, Cal. Bus. & Prof. Code §§ 17500 et seq.)

121.    Plaintiffs specifically reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 120 hereof.

122.    As alleged herein, defendants have publicly disseminated, or caused to be publicly disseminated, advertising, including over the Internet and through electronic mail, which contained statements that were untrue or misleading, concerning their products and services.

123.    As alleged herein, defendants knew, or in the exercise of reasonable care should have known, that their advertising statements regarding their products and services were untrue or misleading.

124.    As a result of these untrue and misleading advertising statements, defendants have diverted trade from Plaintiffs and their authorized resellers by fraudulently representing that the products sold by defendants have qualities which in fact they do not have, but which the products of Plaintiffs do have, and defendants made said representations intending that they would divert trade away from Plaintiffs and their authorized resellers.

125.    Defendants' conduct constitutes false advertising in violation of California Business & Professions Code §§ 17500 et seq.

126.    Defendants' wrongful acts have injured and threaten to continue to injure Plaintiffs. Among other things, defendants have realized revenue and profits by virtue of their wrongful acts that they would not otherwise have obtained and to which they are not entitled. Plaintiffs also have been injured and will continue to incur attorneys' fees and costs in bringing the present action.

127.    These wrongful acts by defendants have caused and will continue to cause Plaintiffs substantial injury, including loss of customers, dilution of their goodwill, confusion of existing and potential customers, injury to their reputation, and diminution in the value of Plaintiffs' trademarks. The harm these wrongful acts will cause to Plaintiffs is both imminent and irreparable, and the amount of damage sustained by Plaintiffs will be difficult to ascertain if these acts continue. Plaintiffs have no adequate remedy at law for the wrongful actions of defendants.

128.    Plaintiffs are entitled to an order of this Court preliminarily and permanently enjoining defendants and their agents, employees and all others acting in concert with them, from directly or indirectly committing such unfair, unlawful and/or fraudulent business practices. Plaintiffs are further entitled to restitution of any monies which may have been acquired by defendants by means of such unfair, unlawful and/or fraudulent business practices, in an amount to be determined, as well as restitution of all profits and gains wrongfully received by defendants.

### SIXTH CLAIM FOR RELIEF

(Unfair Competition, Cal. Bus. Prof. Code §§ 17200 et seq.)

129.    Plaintiffs specifically reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 128 hereof.

130.    Defendants' conduct, as alleged above, constitutes unlawful, unfair or fraudulent business practices in violation of California Business & Professions Code §§ 17200 et seq.

131.    Defendants' wrongful acts have injured and threaten to continue to injure Plaintiffs. Among other things, defendants have realized revenue and profits by virtue of their wrongful acts that they would not otherwise have obtained and to which they are not entitled. Plaintiffs also have been injured and will continue to incur attorneys' fees and costs in bringing the present action.

132.    These wrongful acts by defendants have caused and will continue to cause Plaintiffs substantial injury, including loss of customers, dilution of their goodwill, confusion of existing and potential customers, injury to their reputation, and diminution in the value of Plaintiffs' trademarks. The harm these wrongful acts will cause to Plaintiffs is both imminent and irreparable, and the amount of damage sustained by Plaintiffs will be difficult to ascertain if

these acts continue. Plaintiffs have no adequate remedy at law for the wrongful actions of defendants.

133.    Plaintiffs are entitled to an order of this Court preliminarily and permanently enjoining defendants and their agents, employees and all others acting in concert with them, from directly or indirectly committing such unfair, unlawful and/or fraudulent business practices. Plaintiffs are further entitled to restitution of any monies which may have been acquired by defendants by means of such unfair, unlawful and/or fraudulent business practices, in an amount to be determined, as well as restitution of all profits and gains wrongfully received by defendants.

<u>SEVENTH CLAIM FOR RELIEF</u>

(For California Trademark Dilution, Cal. Bus. & Prof. Code § 14330,

and Texas Trade Dilution, Tex. Bus. & Com. Code § 16.29)

134.    Plaintiffs specifically reallege and incorporate herein by reference each and every allegation contained in Paragraphs 1 through 133 hereof.

135.    Plaintiffs' trademarks VERISIGN and THAWTE constitute marks valid under common law.

136.    Defendants' use of Plaintiffs' marks in connection with their products and services is likely to injure Plaintiffs' business reputation or to dilute the distinctive quality of Plaintiffs' marks and the products associated with Plaintiffs' marks in violation of Cal. Bus. & Prof. Code § 14330 and Tex. Bus. & Com. Code § 16.29.

137.    By these actions, Defendants have gained financial benefit for themselves and have caused financial loss and damages to Plaintiffs.

- 40 -

138.    Such actions by Defendants have caused and will continue to cause Plaintiffs irreparable injury for which Plaintiffs have no adequate remedy at law.

139.    Defendants are liable for direct and/or contributory dilution of these marks under California law.  As alleged above, Defendants' use of the Infringing Domain Names and their use of the VERISIGN and THAWTE Marks on their websites injures Plaintiffs' business reputation and dilutes the distinctive quality of Plaintiffs' trademarks in VERISIGN and THAWTE and lessens the capacity of such marks to identify and distinguish Plaintiffs' goods and services.

140.    Plaintiffs are entitled to an order from this Court preliminarily and permanently enjoining defendants, their agents, employees and others acting in concert with them, from directly or indirectly making any further commercial use of the VERISIGN and THAWTE marks, or any other name, marks or designs that are substantially similar thereto, in connection with defendants' goods or services.

<u>EIGHTH CLAIM FOR RELIEF</u>

(For Intentional Interference with Prospective Economic Advantage)

141.    Plaintiffs specifically reallege and incorporate herein by reference each and every allegation contained in Paragraphs 1 through 88 hereof.

142.    Plaintiffs have an economic relationship with their digital certificate customers, each of whom enters into a commercial agreement with the issuer of their digital certificate. These relationships offer Plaintiffs a probability of future economic benefit because Plaintiffs reasonably expect that some number of its existing customers will renew their digital certificates with Plaintiffs.

certificate customers at the time defendants contacted these customers and engaged in the unlawful acts set forth herein. In fact, defendants acknowledge this relationship in the advertising solicitations sent to Plaintiffs' customers. Moreover, defendants have continued to engage in such acts despite having received notice from Plaintiffs of their relationship with these customers.

144.    Defendants intentionally engaged in the unlawful acts set forth herein for the purpose of disrupting Plaintiffs' economic relationship with their existing customers.

145.    Plaintiffs are informed and believe, and on that basis allege, that defendants actually have disrupted Plaintiffs' economic relationships with their existing customers by engaging in the pattern of unfair business practices alleged herein. Accordingly, Plaintiffs have been directly and proximately harmed by defendants' conduct by, among other things, causing Plaintiffs to lose sales of their own products and services.

146.    Defendants' wrongful acts have injured and threaten to continue to injure Plaintiffs. Among other things, defendants have realized revenue and profits by virtue of their wrongful acts that they would not otherwise have obtained and to which they are not entitled. Plaintiffs also have been injured and will continue to incur attorneys' fees and costs in bringing the present action.

147.    These wrongful acts by defendants have caused and will continue to cause Plaintiffs substantial injury, including loss of customers and injury to their reputation. The harm these wrongful acts will cause to Plaintiffs is both imminent and irreparable, and the amount of damage sustained by Plaintiffs will be difficult to ascertain if these acts continue. Plaintiffs have no adequate remedy at law for the wrongful actions of defendants.

148.    Plaintiffs are entitled to an order of this Court preliminarily and permanently enjoining defendants and their agents, employees and all others acting in concert with them, from directly or indirectly committing such unlawful practices.  Plaintiffs are further entitled to an award of damages sustained by them in consequence of defendants' conduct alleged herein, in an amount to be determined.

149.    Moreover, to the extent defendants' actions were oppressive, fraudulent and malicious, Plaintiffs are entitled to an award of punitive damages

### NINTH CLAIM FOR RELIEF

(For Violation of Texas Business & Commerce Code, Ch. 46)

150.    Plaintiffs specifically reallege and incorporate herein by reference each and every allegation contained in Paragraphs 1 through 88 hereof.

151.    As alleged herein, defendants intentionally transmitted to Plaintiffs' customers and potential customers unsolicited commercial e-mail advertisements including false, misleading, or deceptive information in the subject lines of such e-mail advertisements.

152.    As alleged herein, defendants disseminated such unsolicited commercial e-mail advertisements to Plaintiffs' customers and potential customers with whom defendants had no established business relationship and who had not consented to receive such e-mail advertisements.

153.    As a result of these unsolicited, false and misleading e-mail advertisements, defendants have diverted trade from Plaintiffs and their authorized resellers, and defendants made said representations and transmitted the unsolicited e-mails, intending that they would divert trade away from Plaintiffs and their authorized resellers.

154.    Defendants' wrongful acts have injured and threaten to continue to injure Plaintiffs. Among other things, defendants have realized revenue and profits by virtue of their wrongful acts that they would not otherwise have obtained and to which they are not entitled. Plaintiffs also have been injured and will continue to incur attorneys' fees and costs in bringing the present action.

155.    These wrongful acts by defendants have caused and will continue to cause Plaintiffs substantial injury, including loss of customers, dilution of their goodwill, confusion of existing and potential customers, injury to their reputation, and diminution in the value of Plaintiffs' trademarks. The harm these wrongful acts will cause to Plaintiffs is both imminent and irreparable, and the amount of damage sustained by Plaintiffs will be difficult to ascertain if these acts continue.

WHEREFORE, plaintiffs VeriSign and Thawte pray for judgment as follows:

1.    On the First, Second, Third, Fourth, Fifth, Sixth, Seventh and Eighth Claims for Relief alleged herein, for preliminary and permanent injunctive relief as described herein;

2.    On the First, Second, Third, Fourth, and Eighth Claims for Relief alleged herein, for damages according to proof;

3.    On the First, Second, Third Claim and Ninth Claims for Relief alleged herein, for attorneys' fees and enhanced damages as provided by law;

4.    On the First, Second, Third, Fifth, and Sixth Claims for Relief alleged herein, for defendants' profits;

5.    On the Third and Ninth Claims for Relief alleged herein, for statutory damages as provided by law.

6.    On the Fourth and Eighth Claims for Relief alleged herein, for punitive

damages;

7.    For its costs of suit herein, including its reasonable attorneys' fees; and

8.    For such other, further or different relief as this Court deems just and

proper.

HAYNES AND BOONE, L.L.P.
112 East Pecan Street, Suite 1600
San Antonio, Texas 78205-1540
Telephone:  (210) 978-7000


Date:  _____


_____
Lamont A. Jefferson
State Bar No. 10607800
Charles W. Shipman
State Bar No. 00794628

HAYNES AND BOONE, LLP
901 Main Street, Suite 3100
Dallas, Texas 75202
Telephone:    (214) 651-5000
Facsimile:    (214) 651-5940

ARNOLD & PORTER LLP
1900 Avenue of the Stars, 17th Floor
Los Angeles, California 90067
Telephone:    (310) 552-2500
Facsimile:    (310) 552-1191

Suzanne V. Wilson
Victoria C. Shapiro
Admitted Pro Hac Vice

ATTORNEYS FOR PLAINTIFFS VERISIGN, INC.,
THAWTE CONSULTING (PTY) LTD, AND
THAWTE TECHNOLOGIES, INC.

- 45 -

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiffs VeriSign, Inc.,

Thawte Consulting (Pty) Ltd, and Thawte Technologies, Inc. hereby demand trial by jury of all

issues so triable that are raised herein or which hereinafter may be raised in this action.

HAYNES AND BOONE, L.L.P.
112 East Pecan Street, Suite 1600
San Antonio, Texas 78205-1540
Telephone:  (210) 978-7000

Date:  _____          _____

Lamont A. Jefferson
State Bar No. 10607800
Charles W. Shipman
State Bar No. 00794628

HAYNES AND BOONE, LLP          ARNOLD & PORTER LLP
901 Main Street, Suite 3100          1900 Avenue of the Stars, 17th Floor
Dallas, Texas 75202          Los Angeles, California 90067
Telephone:    (214) 651-5000          Telephone:    (310) 552-2500
Facsimile:    (214) 651-5940          Facsimile:    (310) 552-1191

Suzanne V. Wilson
Victoria C. Shapiro
Admitted Pro Hac Vice

ATTORNEYS FOR PLAINTIFFS VERISIGN, INC.,
THAWTE CONSULTING (PTY) LTD, AND
THAWTE TECHNOLOGIES, INC.

262067_3.DOC