UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| XRAMP TECHNOLOGIES, INC. and XRAMP SECURITY SERVICES, INC., <br> Plaintiffs, <br><br> v. <br><br> GEOTRUST, INC. and CHRISTOPHER BAILERY, <br> Defendants. <br><br> GEOTRUST, INC., <br> Counterclaim Plaintiff, <br><br> v. <br><br> XRAMP TECHNOLOGIES, INC. and XRAMP SECURITY SERVICES, INC., <br> Counterclaim Defendants. | Civil Action No. 05-11374-RCL |

### XRAMP TECHNOLOGIES, INC. AND XRAMP SECURITY SERVICES, INC.'S RESPONSE TO GEOTRUST'S MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS AND INTERROGATORY ANSWERS AND CROSS-MOTION FOR PROTECTIVE ORDER

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, the plaintiffs and counterclaim defendants, XRamp Technologies, Inc. and XRamp Security Services, Inc. ("XRamp") hereby respond to the Motion to Compel the Production of Documents and Interrogatory Answers of the defendants and counterclaim plaintiffs, GeoTrust, Inc. and Christopher Bailey ("GeoTrust") as follows.

I. "GeoTrust's Motion Is Rendered Moot, as a Practical Matter, by XRamp's Substantial Compliance.

All of the documents related to the VeriSign litigation, which are the subject of the pending motion to compel, have been produced with the exception of certain privileged materials, identified in a letter which is attached as "Exhibit A." In these circumstances, GeoTrust's motion to compel is essentially moot. See Palomar Medical Technologies, Inc. v. Cutera, Inc., 2005 U. S. Dist. LEXIS 32117 (D. Mass., Dec. 12, 2005) (patent holder's motion to compel denied where party "has supplemented its earlier responses;" "[t]he motion is denied. Not only is it moot, it is invasive and inevitably treads on attorney-client privilege").

Prior to filing of the pending motion to compel, counsel for GeoTrust was informed that the requested documents would be voluntarily produced. XRamp's inability to specify the precise date when these documents would be produced was based simply on delays in retrieving these documents from storage and in shipping them from XRamp's headquarters in Texas. Counsel in Boston was unable to predict when the documents would arrive, and was not been deceptive or evasive. Ultimately, a large box containing hundreds of documents was produced to GeoTrust within the past week.

XRamp has now produced all documents which it possesses related to its calculation of its damages. To the extent that it may have, and has, relied on information available on various industry web sites related to the sales growth of its competition, this information is equally available to GeoTrust.

Finally, Xramp has retained an expert witness on damages who, in accordance with the discovery order entertained in this case, will be identified, together with the basis of his calculation of

-2-

damages.

## II. Prior Confidentiality Agreement and Need for Protective Order Under Fed. R. Civ. P. 26(c).

The VeriSign settlement agreement is subject to a confidentiality agreement, a copy of which is attached as "Exhibit B." Under the terms of that agreement, Xramp may not disclose the agreement to any party in the absence of a specific Court order to that effect. It also requires that VeriSign be informed of the request for production and provided the opportunity to oppose the production. VeriSign has been sent such notice (see "Exhibit C," attached), and this business competitor of GeoTrust's should be afforded a reasonable opportunity to decide whether or not it opposes production of the agreement involved.

A separate non-disclosure agreement also exists between XRamp and GlobalSign. See attached agreement, identified as "Exhibit D." As with VeriSign, GlobalSign, another business competitor of GeoTrust's, has been notified of GeoTrust's discovery requests (see "Exhibit E," attached), and GlobalSign should likewise be afforded a reasonable opportunity to decide whether or not it objects to the production of the agreement involved.

If XRamp did not oppose the production of these agreements, it would be in violation of the non-disclosure provisions contained in these separate agreements with VeriSign and GlobalSign.

In addition, with respect to the Global Sign agreement, XRamp objects and moves for a protective order because the agreement contains financial terms and other proprietary information, the disclosure of which could cause it substantial harm in its business competition with GeoTrust and others. In addition, the terms of these agreements are irrelevant to the issues raised by the parties in this

litigation. GeoTrust is unable to show a "substantial need" for these agreements in the circumstances.

III. <u>Conclusion</u>.

Based on the foregoing arguments and authorities and the attached exhibits, XRamp requests that the Court <u>deny</u> GeoTrust's motion to compel as being substantially moot in the circumstances, <u>allow</u> XRamp's motion for a protective order until such time as VeriSign and GlobalSign have a reasonable opportunity to object to the disclosure of the confidentiality agreements involved, and <u>deny</u> GeoTrust's motion for costs.

Respectfully submitted,

_____
John W. Brister, BBO #057420
BRISTER & ZANDROW, L.L.P.
268 Summer Street
Boston, Massachusetts 02210-1108
(617) 292-4900

Date: March 31, 2006

**CERTIFICATE OF SERVICE**
I hereby certify that on this day a true copy of the above document was served upon the attorney of record for each party by mail/by hand.
_____

# BRISTER & ZANDROW, L.L.P.

*COUNSELORS AT LAW*

*268 SUMMER STREET*
*BOSTON, MASSACHUSETTS 02210-1108*
*TELEPHONE (617) 292-4900*
*FACSIMILE (617) 292-4910*
*http://www.BZ-Law.com*

JOHN W. BRISTER
LEONARD F. ZANDROW, JR.

WRITER'S DIRECT DIAL NUMBER
(617) 292-4901

March 31, 2006

**By FAX  (617) 542-0900**

Daniel P. Tighe, Esq.
Griesinger, Tighe & Maffei, LLP
176 Federal Street
Boston, MA 02110

Re:  **Xramp v. GeoTrust**, Civil Action No. 05-11374-RCL

Dear Dan:

The following is a list of documents which were removed from the box of materials related to the Verisign litigation which you recently took to be copied. The withheld documents are limited to attorney-client communications, memos prepared by Scott Harris related to the litigation, and documents which incorporate the Confidential Settlement Agreement.

1. Undated memo from Harris to attorney.
2. April 1, 2004 Confidential Settlement Communication from Arnold & Porter, LLP to Bayne, Snell & Krause.
3. Undated letter from Harris to Barry Snell, Esq.
4  Undated handwritten memo.
5. Undated memo to attorney.
6. Undated memo to attorney.
7. Undated memo to Stewart Alexander, Esq.
8. Correspondence from Stewart Alexander, Esq.
9. Undated memo.
10. Unsigned settlement agreement.
11. Memo to attorney.
12. April 26, 2004 Confidential Settlement Communication from Arnold & Porter, LLP.
13. May 19, 2004 correspondence from Bayne, Snell & Krause.

Ex. A

14. April 5, 2004 correspondence from Bayne, Snell & Krause.
15. Undated memo to attorney.
16. Undated memo to attorney.
17. Undated memo.
18. Draft pleadings prepared by Scott Harris.
19. April 16, 2004 correspondence from Barry Snell, Esq.
20. May 21 2004 correspondence from Barry Snell, Esq.
21. March 26, 2004 correspondence from Barry Snell, Esq.

Sincerely,

*/s/ John W. Brister*

John W. Brister

10. ***Confidentiality.*** The XRamp Parties agree to keep the fact of this Agreement, and underlying settlement, and the terms of this Agreement, strictly confidential and to refrain from disclosing the terms of this Agreement to any person or entity, except upon prior written consent of VeriSign or to the extent necessary to: (a) enforce the terms of this Agreement; (b) advise their shareholders of this Agreement; (c) comply with an order of a court or other

-7-    Ex. B

judicial or governmental tribunal; (d) comply with disclosure or reporting obligations under state or federal tax laws; or (e) otherwise comply with the law. Unless expressly provided herein, or with the prior written consent of VeriSign, or as required by law, the XRamp Parties shall not comment on the Agreement to any person or in any forum other than to state that the matter has been resolved on confidential terms. In the event any of the XRamp Parties receives a subpoena or similar legal process and it is reasonably foreseeable that it will require disclosure or production of this Agreement or its terms, that Party shall provide immediate written notice to VeriSign of the subpoena, sufficiently in advance of the production or disclosure date to allow VeriSign or Thawte to object to the subpoena or similar legal process. The authorized representative(s) who sign this Agreement on behalf of the XRamp Parties will inform each officer, director, employee or partner of that Party, who has knowledge of this Agreement, of this provision. Nothing in this Paragraph 10 shall prevent any Party from asserting or pursuing any claim to enforce the terms of this Agreement based on a breach of any term herein.

# BRISTER & ZANDROW, L.L.P.

*COUNSELORS AT LAW*

268 SUMMER STREET
BOSTON, MASSACHUSETTS 02210-1108
TELEPHONE (617) 292-4900
FACSIMILE (617) 292-4910
http://www.BZ-Law.com

JOHN W. BRISTER
LEONARD F. ZANDROW, JR.

WRITER'S DIRECT DIAL NUMBER
(617) 292-4901

March 31, 2006

VeriSign, Inc.
Attention: Andrea Vavonese
Litigation Counsel
21355 Ridgetop Circle
Dulles, VA 20166

Dear Ms Vavonese:

This office represents XRamp Technologies, Inc. and XRamp Security Services, Inc. in litigation pending in the U.S. District Court of Massachusetts. Enclosed is a motion filed by the defendant Geotrust, Inc. which includes a request for an order requiring the production of the Settlement Agreement and Mutual Release between Verisign et al and XRamp et al dated May 24, 2004.

Notice is hereby provided pursuant to paragraph 10 of the Agreement.

Please advise if you wish to take action in the Massachusetts litigation to oppose the production of the Agreement.

Very truly yours,

John W. Brister

cc: Arnold & Porter
    Attn: Suzanne V. Wilson
    1900 Avenue of the Stars, 17th Floor
    Los Angeles, CA 90067

Ex. C



# Mutual Non Disclosure Agreement
# Xramp Technologies Inc.

E x D



### Mutual Non Disclosure Agreement

BETWEEN:

GlobalSign NV/SA, a Belgian entity having offices and place of business at B-3001 Leuven, "Ubicenter", Philipssite 5, duly represented by Mr. Johan Sys, General Manager,

(hereinafter referred to as "GlobalSign")

AND:

**Xramp Technologies Inc.**, a United States entity having an office and place of business at Company Address, duly represented by Scott Harris, General Manager.

(hereinafter referred to as the "Contractor"),

(individually hereinafter referred to as a "Party" and collectively as the "Parties")

**WHEREAS**:

Certain information provided by one Party to the other will be confidential to the disclosing Party and the Parties have agreed to maintain the confidentiality of all such information on the following terms:

**NOW THIS AGREEMENT WITNESSES** that, in consideration of the premises and of the mutual covenants herein contained, the Parties agree as follows:

1  **Confidential Information**

In this Agreement, "Confidential Information" shall mean all information, in whatever form, disclosed by one Party to the other and which the disclosing Party identifies as confidential and includes all digests, notes, analyses and other material prepared by the receiving Party based upon or derived from Confidential Information. For the purposes of this Agreement, the following shall be sufficient identification of Confidential Information:

(a)   in the case of information in tangible form, if the material is marked or stamped with the word "confidential", "secret" or a similar term;

(b)   in the case of information provided in an electronic medium, if a notice identifying it as confidential is displayed or printed; and



(c)    In any other case, if is identified by the disclosing Party in writing as being confidential within ten (10) days of first disclosure, during which ten day period the receiving Party shall treat such information as if it were Confidential Information.

## 2    Non-Disclosure

The Parties shall keep confidential and not disclose to any other person any of the Confidential Information except as expressly permitted. The Parties shall ensure that no other person can have access or gain knowledge of the Confidential Information.

## 3    Use

The Parties shall not use, in any way, which is not expressly permitted by the disclosing Party, any of the Confidential Information.

## 4    Exceptions

The obligations of a Party concerning the other Party's Confidential Information shall not apply to information which:

(a)    is or becomes generally known within the computer industry other than by reason of a breach of this Agreement or, to the knowledge of the receiving Party, a breach of a similar Agreement;

(b)    is or has been independently developed by the receiving Party without reference to or based upon the other party's Confidential Information;

(c)    the disclosing Party agrees in writing need not be kept confidential;

(d)    is required by law or a court of competent jurisdiction to be disclosed by the receiving Party provided such party first gives prompt notice of the requirement to disclose to the other Party to allow that Party to obtain an appropriate order or other protection against the publication of such information.

## 5    No Warranties

Neither Party makes any representation or warranty as to the accuracy, completeness, value or relevance of any Confidential Information disclosed hereunder. Neither Party shall be liable to the other for any expenses or losses, or action incurred or undertaken by the other in reliance on Confidential Information.



**6    Patent, Trademark, Copyright**

Nothing in this Agreement shall be construed to grant to either Party any right or license under any patent nor trademark nor copyright of the other Party. Nothing in this Agreement can be construed as creating any obligation on the part of either Party to disclose any information whatsoever.

**7    Ownership**

The receiving Party hereby acknowledges and agrees that any and all Confidential Information disclosed hereunder by the disclosing Party is and shall remain owned solely by the disclosing Party who shall have and keep the sole right to file patent applications or any other kind of intellectual property protection in connection with such Confidential Information.

**8    Assignments**

As this Agreement is "intuitu personae", neither Party shall assign nor transfer the rights and obligations emanating from this Agreement, in whole or in part, to any third party or to any of its affiliate companies without prior written approval of the other Party.

**9    Termination**

Upon termination of the contractual relationship which resulted out of negotiations between both Parties or upon termination of the negotiations, all Confidential Information shall be returned to the disclosing Party or destroyed, evidence of which needs to be produced. The obligations emanating from this Agreement shall continue for a period of five (5) years from receipt of the Confidential Information, regardless of termination of this Agreement.

**10    Applicable Law**

This Agreement shall be governed by and interpreted in accordance with the laws of Belgium.

**11    Disputes**

The Parties shall initially attempt to settle any dispute amicably. In the event of it being impossible to settle a dispute amicably within thirty (30) days, it shall be submitted to the courts in Brussels to the exclusion of any other.



Signed in Leuven, in two originals, each party acknowledged having received one.

For GlobalSign               For Xramp Technologies Inc.
Johan Sys,                   Scott Harris,
General Manager              General Manager
Date:                        Date:

# BRISTER & ZANDROW, L.L.P.

*COUNSELORS AT LAW*

268 SUMMER STREET
BOSTON, MASSACHUSETTS 02210-1108
TELEPHONE (617) 292-4900
FACSIMILE (617) 292-4910
http://www.BZ-Law.com

JOHN W. BRISTER
LEONARD F. ZANDROW, JR.

WRITER'S DIRECT DIAL NUMBER
(617) 292-4901

March 31, 2006

GlobalSign NV/SA
B-3001 Leuven
"Ubicenter"
Philipssite 5
Belgium
Attn: Johan Sys, General Manager

Dear Mr. Sys:

This office represents XRamp Technologies, Inc. and XRamp Security Services, Inc. in litigation pending in the U.S. District Court of Massachusetts. Enclosed is a motion filed by the defendant Geotrust, Inc. which includes a request for an order requiring the production of information which is subject to the Mutual Non Disclosure Agreement between XRamp Technologies Inc. and GlobalSign, a copy of which is enclosed.

Notice is hereby provided pursuant to paragraph 4(d) of the Agreement.

Please advise if you wish to take action in the Massachusetts litigation to oppose the production of the Confidential Information related to business agreements between XRamp and GlobalSign.

Please be advised that XRamp will oppose production of the information, and will advise you of any court order issued related to this issue.

Very truly yours,

John W. Brister

Ex. E